## BARNSDALL REFINERIES, Inc., et al. v. OKLAHOMA TAX COMMISSION et al.

No. 25181.  Feb. 19, 1935.

Rehearing Denied March 12, 1935.

James B. Diggs, Joe Dickerson, R. W. Garrett, Wm. H. Zwick, and L. G. Owen, for plaintiffs.

C. W. King and A. L. Herr, for defendants.

WELCH, J. The plaintiffs, holding governmental leases properly executed by and with the approval of the Secretary of the

Interior of the United States, are producing crude oil from the lands of the Osage Tribe of Indians in Osage county, Okla. They seek to enjoin collection of the tax sought to be collected on such oil pursuant to the provisions of chapter 132, S. L. 1933. The contention of the plaintiffs is that the leases held by them are instrumentalities employed by the United States government for the development and use of Osage lands for the benefit of the Osage Tribe of Indians, and are governmental agencies or instrumentalities; that no tax thereon may be imposed by the state of Oklahoma without the consent of the United States government; that the tax in question is an excise tax; that no consent has been given by the United States government to the levy and collection of such tax; and that therefore such tax may not be levied and collected on such oil produced from Osage lands.

The defendants maintain that the tax in question is an additional gross production tax, and is therefore authorized by the Act of Congress of March 3, 1921, sec. 5, 41 Stat. at Large, 1250, which act authorizes the state of Oklahoma to levy and collect a gross production tax on oil and gas produced in Osage county, Okla.

It is now beyond question that the oil leases held by the plaintiffs are governmental instrumentalities, and that the state of Oklahoma may not impose any tax thereon without the consent of the United States government. Carter Oil Co. v. Oklahoma Tax Commission, 166 Okla. 1, 25 P. (2d) 1092; Choctaw, O. & G. R. Co. v. Harrison, 235 U. S. 292, 59 L. Ed. 234; Indian Territory Illuminating Oil Co. v. Oklahoma, 240 U. S. 522; Howard v. Oklahoma Oil Companies, 247 U. S. 503, 62 L. Ed. 1239; Large Oil Co. v. Howard, 248 U. S. 549, 63 L. Ed. 416; Gillespie v. Oklahoma, 257 U. S. 501, 66 L. Ed. 338; Jaybird Mining Co. v. Weir, 271 U. S. 609, 70 L. Ed. 1112. And it seems to be conceded by the defendants that this tax could not be levied and collected without the consent of the United States government.

In 1916 the state Legislature adopted the gross production tax law carried forward as section 12434, O. S. 1931, providing in substance for the collection of a gross production tax equal to three per centum of the gross value of the production of oil and gas, with provision in the act (sec. 12445, O. S. 1931) for the expenditure of the funds realized from that tax for current expenses of the state government, in aid of common schools of the county where the oil and gas are produced, and in aid of the construction of permanent roads and bridges of the county where the oil and gas are produced.

It was then held by the courts (see above authorities) that this tax could not be collected on oil produced from the Osage Indian lands for lack of consent thereto on the part of the United States government.

Thereafter, on March 3, 1921, the Congress adopted a permissive act (41 Stat. at Large, 1250), providing as follows:

"Sec. 5. That the state of Oklahoma is authorized from and after the passage of this act to levy and collect a gross production tax upon all oil and gas produced in Osage county, Okla., and all taxes so collected shall be paid and distributed, and in lieu of all other state and county taxes levied upon the production of oil and gas as provided by the laws of Oklahoma, the Secretary of the Interior is hereby authorized and directed to pay, through the proper officers of the Osage Agency, to the state of Oklahoma, from the amount received by the Osage Tribe of Indians as royalties from production of oil and gas, the per centum levied as gross production tax, to be distributed as provided by the laws of Oklahoma; Provided, that the Secretary of the Interior is hereby authorized and directed to pay, through the proper officers of the Osage Agency, to Osage county, Okla., an additional sum equal to 1 per centum of the amount received by the Osage Tribe of Indians as royalties from production of oil and gas, which sum shall be used by said county only for the construction and maintenance of roads and bridges therein; Provided, further, that the proper officials of Osage county shall make an annual report to the Secretary of the Interior showing that said fund has been used for road and bridge construction and maintenance only."

Since that act of Congress became effective the state has collected upon oil produced in Osage county, Okla., the gross production tax provided for in section 12434, O. S. 1931.

In 1933 the State Legislature adopted House Bill No. 481, chapter 131, S. L. 1933, referred to as the "Proration Law," and having for its purpose the prevention of waste of crude petroleum and natural gas, and providing in partial substance that whenever the full production of any common source of supply of oil in this state can only be obtained under conditions constituting waste, then any person having the right to drill into and produce oil from

any such common source of supply should only take therefrom such proportion, or his proper portion of the oil, that may be produced therefrom without waste (sec. 4). This act created the official machinery for its enforcement, and provided for the appointment of various salaried officials, and authorized the expense incident to the many details of the enforcement of the law in these regards. The same Legislature adopted House Bill No. 483, chapter 132, Sess. Laws 1933, entitled "An Act levying an excise tax of one-eighth of 1 cent per barrel on petroleum oil produced in the state of Oklahoma, subsequent to the passage and approval of this act," and the body of the act levied such an excise tax, and provided for its collection, and provided in substance that the funds derived from the levy and collection of that tax should be deposited in the state treasury to the credit of a special and distinct fund to be known as "The Proration Fund," and to be expended for salaries, supplies, and expenses as fixed and authorized by the provisions of House Bill No. 481, the "Proration Law" above referred to.

Under the provisions of this act, this tax is levied only for the period of time from the effective date of the act in 1933 to June 30, 1935. It is that tax of one-eighth of one cent per barrel on oil that is here under consideration.

In considering this cause, and at the outset, we are met with the question whether this tax of one-eighth of one cent per barrel is or is not an "excise tax." It was denominated an "excise tax" by the Legislature in the body of the act levying the tax and in the title thereto, and while the designation of a tax is not necessarily controlling as to what is the nature and character of the tax, yet this tax is not in any manner based upon the value of the oil taxed, applying alike to the most valuable barrel of oil as to the least valuable barrel. This tax is small in amount, and to exist for a limited time only, and for the benefit of a special fund or purpose as distinguished from a general purpose. It therefore bears all the earmarks of an excise tax as distinguished from a property tax, and we conclude that it is in truth and in fact what the Legislature designated it to be, that is, an "excise tax." Patton v. Brady, 184 U. S. 608, 46 L. Ed. 713; Flint v. Stone Tracy Co., 220 U. S. 107, 55 L. Ed. 389.

But it is the contention of the defendants that, whether this tax is determined to be an excise tax or not, it is levied upon the gross production of oil, and is but an additional gross production tax and within the permissive act of Congress above referred to.

Having concluded that this tax is an excise tax, and it not being contended that there is any specific consent to the levy and collection of an excise tax, we must determine whether this tax is consented to by the Act of Congress of March 3, 1921, consenting to the levy and collection of a state gross production tax.

Since the adoption of the legislative act of 1916, the three per centum tax thereunder levied and collected has been commonly known and referred to as the "gross production tax." That act provides specifically that the tax therein levied shall and should be "in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts, and other municipalities, upon any property rights attached to or inherent in the right to said minerals, upon leases," etc. O. S. 1931, sec. 12434. That act also provided that the funds collected should be distributed and expended for the three purposes heretofore stated. O. S. 1931, sec. 12445.

This one-eighth of one cent tax is levied on each barrel of oil without regard to the value of the oil taxed. It is not a per centum tax, as is the gross production tax. The money collected for gross production tax is distributed two-thirds for current expense of state government, and the remaining one-third is distributed one-half to the common schools of the county where the oil is produced, and one-half in aid of the construction of permanent roads and bridges of the county where the oil is produced, while the money collected for the one-eighth of one cent excise tax is not distributed in general over the state, nor is any of it restricted to or required to be expended in the county where the oil is produced, but, on the contrary, this money goes into the "proration fund" and is used to pay expenses of maintaining and enforcing proration only in and for those pools or common sources of supply of oil where the conditions are such that the full production of oil from that common source of supply cannot be taken without constituting waste. Considering the differences in the method of levying of the gross production tax and the excise tax here under consideration, and the different method of distribution of the gross production tax collections and the excise tax collections, Con-

gress might well have consented to the imposition of the gross production tax in the language above quoted from the congressional act, without having any inclination or intention of consenting to the imposition of such a tax as the excise tax here under consideration. As regards the matters here under consideration, the duty, purpose, and policy of the United States government was to look after and provide for the general well-being of the Osage Indians, and provide for the care and protection of their property. The Congress might well have observed and considered the benefits that would be received by the Osage Indians in Osage county, Okla., by the collection of the gross production tax and the expenditure thereof in the method and for the three purposes provided in that act. The same federal authority might not observe such benefits as would justify the government in consenting to this excise tax on the oil produced from the Osage Indian lands. This proration fund may or may not be expended in Osage county. There may be but few common sources of supply in Oklahoma to which the proration law would apply, in which event all collections of this excise tax would be used in the enforcement of the proration law in and for those pools or sources of supply which come within the provisions of the proration law. Such pools or sources of supply may, of course, decrease in number and may be far removed from the Osage Indian lands. The enforcement of this act, however beneficial to those common sources of supply where it is applicable, and however beneficial indirectly in and to other oil fields, might or might not in the opinion of governmental authorities be beneficial to the wards of the government, the Osage Indians. The Congress might or might not consent to the levy and collection of this excise tax.

Congress might have withheld consent to the levy and collection of any state tax on these government instrumentalities. The state of Oklahoma thus far has withheld consent to the collection of federal taxes on similar state instrumentalities, and the objections to such federal taxes as constituting burdens on state instrumentalities has been sustained. Burnet v. Coronada Oil & Gas Co., 285 U. S. 393, 76 L. Ed. 815.

Our state should freely act in the levy and collection of a tax on national governmental instrumentalities which is consented to by the national government, but we should be slow to presume upon consent given, and careful to remain within the limits of the acquiescence or the consent heretofore given, and we should not create or presume the right to levy and collect one tax because the national government has consented to the levy and collection of another and a different tax. Under the permissive act of Congress we have levied and collected the gross production tax which was authorized and permitted, and further than that we cannot go with other taxes until and unless that government should itself extend the consent and permission heretofore granted. That governmental consent cannot be extended or enlarged upon by the State Legislature, and should not be by this court.

We conclude that the tax of one-eighth of one cent per barrel levied by chapter 132, S. L. 1933, is an excise tax and not an additional gross production tax; that this excise tax is levied upon governmental agencies when it is sought to be applied to oil produced from the lands of the Osage Indian Tribe under the leases held by the plaintiffs; that it cannot be so applied without the consent of the national government, and that this consent has not been given. It therefore follows that such collection of this tax must be enjoined, and in keeping with the prayer of the plaintiffs' petition the defendant, the Oklahoma Tax Commission, and Melven Cornish, John T. Baily, and W. D. Humphrey, as chairman and members of said Commission, and R. B. Connor, as sheriff of Osage county, Okla., are hereby enjoined from collecting this excise tax of one-eighth of one cent per barrel on any and all oil produced from the lands of the Osage Tribe of Indians situate in Osage county, Okla., until and unless the consent of the United States government for the imposition of such tax shall be given.

McNEILL, C. J., and BAYLESS, PHELPS, and GIBSON, JJ., concur. OSBORN, V. C. J., and RILEY, BUSBY, and CORN, JJ., dissent.

OSBORN, V. C. J. (dissenting). As I view it, the majority opinion has placed a strained and technical construction upon the act of Congress involved herein, and does not give due consideration to the spirit, purpose, and intent thereof.

By virtue of the decisions quoted in the majority opinion and prior to the permissive act of Congress (Act March 3, 1921, 41 Stat. at Large 1250), oil operators had es-

caped all taxation on oil and gas produced from certain Indian lands on the theory that as such operators they constituted federal agencies. The state was therefore powerless to claim any revenue whatever for the support of its governmental functions from this natural resource, which was rapidly becoming exhausted. The preferment of an oil operator who produced oil from Indian lands over another operator who produced oil from other lands is not sustained by the principles of common justice. To remedy the unfair situation so created, the permissive act of Congress was passed.

The act specifically grants authority to the state of Oklahoma to levy a gross production tax on all oil and gas produced in Osage county. It is significant that the maximum or minimum tax is not prescribed by the act. Thus there is manifested a clear intent that the oil and gas produced in Osage county should be taxed on the same basis as oil and gas produced on other lands within the state.

A helpful rule of construction relating to a similar problem involving taxation is announced by the Supreme Court of the United States in the case of Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 455, wherein it is said:

"This argument, upon analysis, resolves itself into a mere question of definitions, and has no legitimate bearing upon any question raised under the federal Constitution. For, where the question is whether a state taxing law contravenes rights secured by that instrument, the decision must depend not upon any mere question of form, construction or definition, but upon the practical operation and effect of the tax imposed. St. Louis-S. W. Ry. v. Arkansas, 235 U. S. 350, 362, 35 S. Ct. 99, 59 L. Ed. 265; Mountain Timber Co. v. Washington, 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642; Crew Levick Co. v. Pennsylvania, 245 U. S. 294, 38 S. Ct. 126, 62 L. Ed. 295; American Mfg. Co. v. St. Louis, 250 U. S. 459, 39 S. Ct. 522, 63 L. Ed. 1084."

Pursuing the above policy of construction, it is apparent that it is immaterial whether the tax involved herein is called an excise tax, a property tax, or a gross production tax. We cannot escape the conclusion that it is a tax on the gross production of oil.

Two reasons are assigned in the majority opinion as to why the tax does not come within the permissive act of Congress. The first relates to the manner of levy, in which

it is pointed out that the gross production tax is based on the gross value of oil produced, while the tax involved herein is fixed at a flat rate per barrel of oil. I fail to perceive any manner in which this distinction relates to the practical operation and effect of the tax imposed. The distinction is purely technical and is not justified by the manifest object and purpose of Congress in the enactment of the permissive statute.

It is also pointed out in the majority opinion that the manner of distribution of the gross production tax differs from the manner of distribution of the tax involved herein. An examination of the permissive act of Congress discloses that the act does not directly or impliedly provide for the manner in which the tax levied by virtue thereof is to be distributed. On the other hand, the act specifically provides that the tax is to be distributed "as provided by the laws of Oklahoma." It must have been contemplated that there was a possibility that the law providing for the distribution of the gross production tax might be changed or amended, and no one would contend that such a change or amendment would invalidate the permissive act of Congress and result in a withdrawal of said permission to levy and collect such tax. In my judgment, it is not within the province of Congress to provide for the manner of distribution of a general tax levy, as this is one of the powers vested in a sovereign state.

No complaint is made as to the justice of the tax. The benefits flowing from the enforcement of the proration laws apply to all oil operators alike. I do not believe that it was the intention of Congress that operators on Indian lands should profit at the expense of other operators. This identical question was presented to the Federal Court of the Northern District of Oklahoma in the case of Gypsy Oil Co. v. Oklahoma Tax Commission, 6 Fed. Supp. 6. The cause was heard by three judges. Although the case was decided on a jurisdictional issue, the judges announced their respective opinions relating to the validity of the tax. Judges McDermott and Kennedy were of the opinion that the tax levied by chapter 132, Session Laws 1933, was within the permissive act of Congress, and Judge Kennamer entertained the opposite view. In my judgment the majority opinion was correct.

But I want to register a most vigorous

dissent to some of the reasoning in the majority opinion. It is not for this, or any other court, to speculate upon the motives that actuated Congress to grant the right of taxation on this governmental agency; it is for this court to construe the language of the act conferring such right. I especially dissent to the expressed theory of the majority opinion set forth therein: "But we should be slow to presume upon consent given, and careful to remain within the limits of the acquiescence or consent heretofore given, and we should not create or presume the right to levy and collect one tax because the national government has consented to the levy and collection of another and a different tax." This is in conflict with the universal rule that the power of taxation is always construed liberally in favor of the sovereign and a claim of exemption from taxation is construed strictly as against one claiming lack of power to levy. I am unable to perceive a distinction in basic effect from a tax that exacts a per centum of the gross value of a barrel of oil and a fixed tax of a fraction of a cent per barrel.

I therefore respectfully dissent. I am authorized to say that BUSBY, J., concurs in this dissenting view.