OKLAHOMA ex rel. OKLAHOMA TAX COMMIS-
SION et al. v. BARNSDALL REFINERIES, INC.
ET AL.

No. 116.   Argued December 12, 1935.—Decided January 6, 1936.

*Messrs. C. D. Cund* and *Earl Foster,* with whom *Messrs.
C. W. King, H. L. McCracken, E. L. Richardson,* and
*Edwin Dabney* were on the brief, for petitioners.

*Mr. L. G. Owen,* with whom *Messrs. Edward H. Chand-
ler, James B. Diggs, R. W. Garrett,* and *Wm. H. Zwick*
were on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

This case presents the single question whether an Okla-
homa tax of ⅛ of a cent per barrel on oil produced in

the state, c. 132, Oklahoma Session Laws, 1933, when applied to oil produced by lessees of lands of the Osage Tribe of Indians in Osage County, Oklahoma, is within the congressional enactment consenting to a state tax upon the production of such oil. The challenged tax is paid into the State Treasury and used ·to defray the expenses of administering the State Oil and Gas Proration Law. The Oklahoma Supreme Court held that the tax is not within the congressional consent and accordingly enjoined its collection as imposing an unconstitutional burden on the Indian leases, which are deemed to be instrumentalities of the federal government. 171 Okla. 145; 41 P. (2d) 918. We granted certiorari to review the judgment of the state court, the case being of public importance because involving relations of the state to the national government.

The Oklahoma legislature, by Act of February 14, 1916, c. 40, Okla. Session Laws, 102, imposed a production tax of 3% of the gross value of all oil produced within the state. The Act provides that the tax shall be in lieu of all other taxes upon oil in place in the ground, oil leases, or equipment used for oil production, and that one-third of the tax collected in each county shall be returned to it for the construction of permanent roads and bridges and " for and in aid of " the common schools. The levy is denominated by the taxing act a " gross production tax," a label which this Court and the Supreme Court of Oklahoma have accepted as appropriate. *Gillespie* v. *Oklahoma*, 257 U. S. 501, 504; *Barnsdall Refineries, Inc.* v. *Oklahoma Tax Comm'n*, 171 Okla. 145, 147.

In *Howard* v. *Gipsy Oil Co.*, 247 U. S. 503, and *Large Oil Co.* v. *Howard*, 248 U. S. 549, this tax was held invalid so far as applied to the production of oil by lessees of lands of the Osage Tribe of Indians, which were located in Osage County, as a tax burden upon instrumentalities of the United States. See *Indian Territory Illuminating Oil Co.* v. *Oklahoma*, 240 U. S. 522; *Gillespie* v. *Okla-*

*homa, supra;* compare *Group No. 1 Oil Corp.* v. *Bass,* 283 U. S. 279; *Burnet* v. *Coronado Oil & Gas Co.,* 285 U. S. 393.

These decisions were followed by the Act of Congress of March 3, 1921, 41 Stat. 1250, § 5 [1] of which authorized the State of Oklahoma to levy a tax upon the gross production of oil in Osage County, with the proviso that ". . . all taxes so collected shall be paid and distributed, and in lieu of all other state and county taxes levied upon the production of oil and gas as provided by the laws of Oklahoma, . . ." Other sections of the act permitted the extension, by an additional twenty-five years, of the period, expiring in 1931, for which mineral leases of the lands of the Osage Indians might be granted by the Secretary of the Interior acting in their behalf.

Congress, in enacting the legislation, was advised of the Oklahoma 3% gross production tax, of the decisions of this Court holding lessees of Indian oil lands, which

---

[1] " Sec. 5. That the State of Oklahoma is authorized from and after the passage of this Act to levy and collect a gross production tax upon all oil and gas produced in Osage County, Oklahoma, and all taxes so collected shall be paid and distributed, and in lieu of all other State and county taxes levied upon the production of oil and gas as provided by the laws of Oklahoma, the Secretary of the Interior is hereby authorized and directed to pay, through the proper officers of the Osage Agency, to the State of Oklahoma, from the amount received by the Osage Tribe of Indians as royalties from production of oil and gas, the per centum levied as gross production tax, to be distributed as provided by the laws of Oklahoma: *Provided,* That the Secretary of the Interior is hereby authorized and directed to pay, through the proper officers of the Osage Agency, to Osage County, Oklahoma, an additional sum equal to 1 per centum of the amount received by the Osage Tribe of Indians as royalties from production of oil and gas, which sum shall be used by said county only for the construction and maintenance of roads and bridges therein: *Provided further,* That the proper officials of Osage County shall make an annual report to the Secretary of the Interior showing that said fund has been used for road and bridge construction and maintenance only."

were located in Osage County, immune from the tax, and that removal of the immunity would benefit the Osage Indians through the return of one-third of the tax to the county. See Hearings before Committee on Indian Affairs, S. 4039 (particularly letters of the Secretary of the Interior and of the Indian Commissioner to the Chairman of the Committee), Part 1, pp. 7, 8; Part 2, pp. 108, 109; Report Senate Committee on Indian Affairs, No. 704, 66th Cong., 3rd Sess. As originally introduced the bill authorized the levy of a gross production tax upon oil produced in Osage County " not to exceed 3 per centum of the value of the same," and directed that it should be " distributed as now provided by the laws of Oklahoma." With the evident purpose of removing the 3% limit but not of otherwise altering the character of the permitted tax, the 3% limitation was stricken from the bill before enactment.

Congress, in removing the tax immunity, thus had in contemplation the particular tax then on the statute books of Oklahoma, then and ever since described as a gross production tax, the benefits of which would inure to Indians in Osage County by the distribution of a part of the tax to that county. The section bears its own evidence of the intention that the waiver of tax immunity of the production of oil from Indian lands was to be limited to a tax having these characteristics. The tax is described as a gross production tax. It is to be " paid and distributed, and in lieu of all other state and county taxes levied upon the production of oil and gas as provided by the laws of Oklahoma, . . ." The reference must be taken to be to the laws then in effect, unless we are to indulge the improbable assumption that the state was to be left free to dispense with the requirement that the tax permitted was to be in lieu of all other taxes. This conclusion seems inescapable, despite the amendment of the bill as introduced by dropping the word " now " from the

direction that the tax is to be " distributed as now provided by the laws of Oklahoma," since in the section as amended the phrase is used to qualify the " lieu " provision of the statute as well as the payment and distribution provisions. The section removing the immunity thus described the gross production tax then on the statute books, which was by the taxing act declared to be in lieu of all other taxes upon the oil leases, with which Congress was particularly concerned. Moreover, the Secretary is directed to pay from Indian funds " the per centum " levied as a gross production tax " to be distributed as provided by the laws of Oklahoma " and to pay to the county for road and bridge construction " an additional sum " equal to one per cent of the oil royalties received upon the Osage Indian leases, the latter sum evidently being in addition to the amounts to be received by the county upon distribution of the gross production tax.

We think that the cumulative effect of the words of the section, obscure until read in the light of its history and of the situation to which it applied, is persuasive that the permitted tax is, as was the then existing tax, one to be measured by the gross value of the oil produced, and to be distributed in part to the counties and thus to be of benefit to the Indian owners of lands in Osage County.

In these particulars the tax of ⅛ of a cent per barrel of oil produced does not conform to the congressional consent. The taxing act does not, as required by the permissive Act, levy a per centum gross production tax in terms of value, and, more important, it provides that the entire tax levied for the period from the effective date of the Act of 1933 to June 30, 1935, is to be used to pay the expenses of state officials authorized by the state "proration law" to apportion and control oil and gas production in such manner as to prevent waste by producers drawing from a common source or pool. No part of the proceeds of the tax is required to be paid to the counties,

and the benefits of proration depending upon the existence of a common source drawn upon by different producers, would not necessarily extend to any particular county.

The Supreme Court of Oklahoma emphasized the fact that the ⅛ of a cent per barrel tax, denominated by the statute an "excise," is an excise tax distinguishable from a property tax in lieu of which the gross production tax is levied, and different from the gross production tax in its temporary character and the method of its computation and distribution, and so concluded that it is not a tax contemplated by the congressional consent. Construing that consent with the strictness appropriate to the interpretation of a waiver of a defined tax immunity of the sovereign, we think the conclusion of the state court was right.

*Affirmed.*