David **MATHESON**, Puyallup-Coeur
d'Alene Indian, et al.,
Plaintiffs,

v.

George **KINNEAR**, Director, Department
of Revenue of the State of Washington
and agents, servants, employees and
persons acting under his authority or
direction, et al., Defendants.

No. 187–73C3.

United States District Court,
W. D. Washington.

Nov. 27, 1974.
Supplemental Opinion Feb. 28, 1975.

Michael E. Withey, Smith, Kaplan & Withey, Seattle, Wash., for plaintiffs.

Slade Gorton, Atty. Gen., State of Wash. by James A. Furber, Sp. Asst. Atty. Gen., Tacoma, Wash., for defendants.

## OPINION

Before KILKENNY, Circuit Judge, and EAST and TURRENTINE, District Judges.

TURRENTINE, District Judge:

### Jurisdiction

This three judge court, convened pursuant to 28 U.S.C. § 2281, has jurisdiction over this matter pursuant to 28 U. S.C. §§ 1331(a), 2201 and 1343; 42 U. S.C. § 1983; and the Treaties of Medicine Creek, 10 Stat. 1132 (1854) and with the Quinault Indians, 12 Stat. 971 (1855). The matters in controversy exceed the sum or value of $10,000.

### Status of Plaintiffs

Plaintiff Edward Comenout is a noncompetent Quinault Indian, enrolled with the Quinault Tribe of Indians, pursuant to 25 U.S.C. § 163, and is a ward of the United States. Plaintiff David Matheson is a Puyallup and Coeur d'Alene Indian and a ward of the United States, and is enrolled with the Coeur d'Alene Tribe of Indians of Idaho.

Edward Comenout together with his mother Anna Jacks Comenout is the owner of a tract of land approximately 2½ acres in area located at 908 River Road East, Puyallup, Pierce County, Washington. The property was purchased for the Comenout family in 1926 with funds held in trust by the United States for its benefit under authority of the treaty with the Quinaults, 12 Stat. 971 (1855) and the General Allotment Act of 1887 as amended. The land is not now and has never been a part of the Puyallup reservation and was at the time of purchase on the tax rolls of the State of Washington.

From time to time with the approval of the Secretary of the Interior, the plaintiff Comenout has leased portions of his property and the improvements thereon for various business purposes. At one time the property was leased to a non-Indian for operation of a used car sales business. The lease income has been used for the support and maintenance of plaintiff Comenout and his family.

In 1971 plaintiff Comenout, with the approval of the Secretary of the Interior, leased a portion of the property to other Indians for the express purpose of retailing untaxed cigarettes.

At the time this action was filed plaintiffs David Matheson and Edward Comenout in partnership owned and operated a cigarette sales business upon the property. Plaintiffs regularly purchased cigarette products from wholesale distributors located outside the territorial boundaries of the State of Washington and arranged for their delivery to their place of business by means of interstate common carrier or transport by Indian persons. The cigarettes were sold commercially to Indians and non-Indians alike.

For several years prior to the filing of this action, agents of the Washington Department of Revenue, pursuant to a search warrant, entered the premises at 908 River Road East and seized untaxed and unstamped cigarettes.

### Issues

The plaintiffs seek to enjoin the searches and seizures as illegal on the ground that the 2½ acre tract in question, and the cigarette sales business conducted thereon, are exempt from a state excise tax as federal instrumentalities pursuant to 25 U.S.C. § 412a, which provides:

All homesteads, heretofore purchased out of the trust or restricted funds of individual Indians, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress: *Provided,* That the title to such homesteads shall be held subject to restrictions against alienation or encumbrance except with the approval of the Secretary of the Interior: *And provided further,* That the Indian owner or owners shall select, with the approval of the Secretary of the Interior, either the agricultural and grazing lands, not exceeding a total of one hundred and sixty acres, or the village, town, or city property, not exceeding in cost $5,000, to be designated as a homestead. June 20, 1936, c. 622, § 2, 49 Stat. 1542; May 19, 1937, c. 227, 50 Stat. 188.

The Comenout property comes within the definition of this statute in that it was purchased prior to May 19, 1937, out of trust or restricted funds; the land is owned subject to a restriction on alienation; the land has been selected as a homestead; the land does not exceed more than three acres and was purchased for less than $5,000.

The issues raised by the pleadings may be simply stated. They are:

(1) Does 25 U.S.C. § 412a, as amended, immunize the plaintiffs from the State of Washington's excise tax on cigarette and tobacco products?

(2) Does the State of Washington's collection procedure violate the due process clause of the federal constitution?

The key question for the Court, then, is whether the phrase in § 412a designating the Indian lands as tax exempt federal instrumentalities prevents the State of Washington from imposing sales tax on cigarettes sold on the Comenout land. This question also brings into play the statute's provision in connection with the existence of a valid federally approved lease on the premises. On February 8, 1971, under the supervision of the Washington Indian Agency, the Comenout property was leased to Jack Moses. The lease, approved February 8, 1971, by the U.S. Bureau of Indian Affairs, contained the following clause in part stating:

That for and in consideration of the rents, covenants, and agreements hereinafter provided, the lessor hereby lets and leases unto the lessee the land and premises described as follows, to whit: . . . ., for the term of five years, beginning on the eighth day of February, 1971, to be used only for the following purposes:

*Retail sale of tax-free cigarettes and tobacco products or other retail business.*

### Immunity from Excise Tax

The plaintiffs proceed on the broad assertion that the Federal Government has exclusive jurisdiction over the plaintiffs and their Tribes for all purposes and that the State is therefore prohibited from enforcing its revenue laws against any private enterprise, whether or not the enterprise is located on the reservation or on § 412a lands. This broad generalization must be rejected. It must give way to more individualized treatment of the specific situation involved. The position of the homesteader on off-reservation land in this case differs from that of Indians conducting business activities within the boundaries of Indian reservations, as in McClanahan v. Arizona State Tax Commission, 411 U.S. 164, 93 S.Ct. 1257, 36 L. Ed.2d 129 (1973) and Mahoney v. Idaho, 96 Idaho 59, 524 P.2d 187 (1973).

Section 412a clearly provides that all homesteads purchased out of the trust

or restricted funds are instruments of the Federal Government and should not be taxable until otherwise directed by Congress. Section 412a does exempt the land in question as to all real property taxes that a State may try to assess against such property, Board of Commissioners v. Seber, 318 U.S. 705, 63 S. Ct. 920, 87 L.Ed. 1094 (1943), and against any improvements installed on the land by the Indian occupants. Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973).

■ But the fact that Congress has declared that the qualifying lands are instrumentalities of the Federal Government does not in and of itself forbid the imposition of taxes which are not directly on the real property.

A California possessory intent tax on leases of restricted Indian lands which were admittedly instrumentalities of the United States did not serve to except the lessee from this tax. Agua Caliente Band of Mission Indians v. County of Riverside, 442 F.2d 1184 (1971), cert. denied, 409 U.S. 901, 93 S.Ct. 94, 34 L. Ed.2d 163.

More recently, in Mescalero, supra, the Supreme Court ruled that the State of New Mexico could validly impose a gross receipts tax on a ski resort operated by the Mescalero Apache Tribe on off-reservation lands. These lands had been leased by the Secretary of Interior on behalf of the Tribe pursuant to 25 U.S.C. § 465, which provides, in part, that "any lands or rights acquired" pursuant to the Indian Reorganization Act "shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation." The Tribe asserted that this exemption of the land from taxation also exempted the gross receipts of the ski resort from the sale of services and tangible property from taxation. The Supreme Court rejected the assertion that the State was prohibited from enforcing

its revenue laws against a tribal enterprise on off-reservation land and concluded that § 465 did not bar the collection of the tax. The Court noted that:

[A]bsent clear statutory guidance, courts ordinarily will not imply tax exemptions and will not exempt off-reservation income from tax simply because the land from which it is derived, or its other source, is itself exempt from tax. Id. 411 U.S. 156, 93 S.Ct. 1274.

■ The holding in Mescalero appears to be applicable to our case. The language in § 412a that trust lands "are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress" is similar to the language in § 465 that "such lands or rights shall be exempt from State and local taxation." The only difference between the two statutes is the language in § 412a that the trust lands are federal instrumentalities. The decision in Mescalero is therefore determinative of our case unless the existence of this additional phrase alters the meaning of § 412a and has the effect of extending the tax exemption of the land to commercial activities on the land as well.

The phrase describing § 412a lands as federal instrumentalities does not differentiate § 412a lands from other tax-exempt off-reservation lands, because these lands have been and are now generally considered federal instrumentalities, whether or not they have been specifically identified as such by statute. The debate has instead centered on whether characterization of the land as a federal instrumentality should extend to commercial activities conducted on the lands. A line of Supreme Court decisions from Choctaw, O. & G. R. Co. v. Harrison, 235 U.S. 292, 35 S.Ct. 27, 59 L.Ed. 234 decided in 1914, though Oklahoma v. Barnsdall Refineries, 296 U.S. 521, 56 S.Ct. 340, 80 L.Ed. 366 decided in 1936, squarely held that some of the profits of the off-reservation lands were protected from state taxation by the

federal instrumentalities doctrine. It was reasoned that taxation of the profits of leases of the land would be "a direct hamper upon the effort of the United States to make the best terms that it can for its wards." Gillespie v. Oklahoma, 257 U.S. 501, 506, 42 S.Ct. 171, 173, 66 L.Ed. 338 (1922).

This line of cases ran contrary to the general rule that tax exemptions are not granted by implication. As stated in Helvering v. Mountain Producers Corp., 303 U.S. 376, 384–85, 58 S.Ct. 623, 627, 82 L.Ed. 907 (1938):

> In numerous decisions we have had occasion to declare the competing principle, buttressed by the most cogent considerations, that the power to tax should not be crippled 'by extending the constitutional exemption from taxation to those subjects which fall within the general application of nondiscriminatory laws, and where no direct burden is laid upon the governmental instrumentality and there is only remote, if any, influence upon the exercise of the functions of government.' Willcuts v. Bunn, 282 U.S. 216, 225, 51 S.Ct. 125, 75 L.Ed. 304 and illustrations there cited.

In the light of *Mountain Producers,* the Supreme Court in Oklahoma Tax Commission v. Texas Co., 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721 (1949), explicitly overruled the *Choctaw-Barnsdall* line of cases, *supra,* and held at pages 365–66, 69 S.Ct. at pages 573–74:

> True intergovernmental immunity remains for the most part. But, so far as concerns private persons claiming immunity for their ordinary business operations (even though in connection with governmental activities), no implied constitutional immunity can rest on the merely hypothetical interferences with governmental functions here asserted to sustain exemption.
>
> . . .
>
> We do not imply, by this decision, that Congress does not have power to immunize these lessees from the taxes we think the Constitution permits

Oklahoma to impose in the absence of such action. The question whether immunity shall be extended in situations like these is essentially legislative in character. But Congress has not created an immunity here by affirmative action, and "The immunity formerly said to rest on constitutional implication cannot now be resurrected in the form of statutory implication." Oklahoma Tax Commission v. United States, 319 U.S. 598, 604, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943).

■ From the history of the *Choctaw-Barnsdall* cases and their rejection by the Supreme Court in Oklahoma Tax Commission v. Texas Co., it appears that off-reservation lands have always been considered federal instrumentalities, regardless of whether or not the statutes providing for tax exemption of these lands explicitly designated them as federal instrumentalities. The presence of language designating § 412a lands as federal instrumentalities does not give them any special status differentiating them from other tax exempt Indian lands. The tax exemption in § 412a is not distinguishable from that contained in § 465. This Court therefore concludes that the decision in *Mescalero* permitting the taxation of the gross receipts of a ski resort on § 465 off-reservation lands, a decision which is an outgrowth of Oklahoma Tax Commission v. Texas Co., *supra,* is equally applicable to permit the State of Washington to impose an excise tax on cigarettes sold on the § 412a land of plaintiff Comenout.

■■ The fact that the Bureau of Indian Affairs approved the lease of the Comenout land for the purpose of the sale of non-taxable cigarettes does not transform the business on the Comenout land into a non-taxable activity. As stated in the Oklahoma Tax Commission v. Texas Co., *supra,* the creation of tax exemptions is a matter of legislative concern. An administrative agency cannot create an exemption where Congress has not.

## 1030

### Collection Procedure

It remains to consider whether the seizure of the plaintiffs' cigarettes without prior notice and hearing violates due process.

The State of Washington's statutory scheme for the seizure and forfeiture of unstamped cigarettes is described in RCW 82.24.130; and 82.24.140. RCW 82.24.130, as amended, provides that, subject to the provisions of RCW 82.24.-250, cigarettes which shall be held, owned or possessed by any person not authorized to possess unstamped cigarettes and not having stamps affixed to the packages constitute contraband goods and may be seized by the Department of Revenue without a warrant. It further provides that the Department of Revenue shall offer the cigarettes for sale at public auction to the highest bidder after due advertisement. Provision is also made for the seizing of any vending machine or any vehicle in which there is located unstamped contraband cigarettes.

RCW 82.24.140 in turn contains details concerning the forfeiture procedures to be followed. There is provision for the appraisal of the property if it is worth more than $100; provision for five days notice in writing at three places in the county where the seizure is made and notice to the owner if known; and provision for any person claiming the property seized as contraband within the time specified in the notice to file a claim in writing concerning the same with the Department of Revenue. If the person claiming the cigarettes issues a sufficient surety bond, the property shall be returned to the claimant pending resolution of the validity of the seizure as contraband. Provision is also made for a judicial review of the question of seizure and forfeiture.

Clearly the statutory pattern provides for notice and judicial review of the questions pertaining to the legality of the seizure and sale of the cigarettes as contraband. The only question to consider is whether a hearing is required prior to seizure.

The plaintiffs assert that the trend of cases in the Supreme Court has required notice and hearing prior to seizure of property and the termination of property rights. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969); Goldberg v. Kelley, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Wisconsin v. Constantinean, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed. 2d 515 (1971); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

These cases do not involve the right of the state or Federal Government to seize property in exercise of the police power in the furtherance of the taxing power, nor do they require prior notice and hearing in every situation. In Fuentes v. Shevin, *supra*, at 90, 91 and 92, 92 S. Ct. at 1999, 2000 the Supreme Court noted:

> There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. Boddie v. Connecticut, 401 U.S. [371], at 379, 91 S.Ct. [780], at 786 [28 L.Ed.2d 113]. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the Court has allowed summary seizure of property to collect

the internal revenue of the United States.[24]

24. Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. The Court stated that '[d]elay in the judicial determination of property rights is not uncommon where it is *essential* that governmental needs be *immediately* satisfied.' *Id.*, at 597, 51 S.Ct., at 611 (emphasis supplied). The Court, then relied on 'the need of the government promptly to secure its revenues.' *Id.*, at 596, 51 S.Ct., at 611.

The Washington statutes involved are narrowly drawn and in the case of seizure of unstamped cigarettes there is a state interest requiring special protection. The requirement of a pre-seizure hearing would completely defeat the enforcement of the cigarette excise tax, because the contraband is readily moved and concealed. Prior notice of seizure would merely serve as an aid to persons seeking to evade the tax laws. This Court finds that the seizures are a valid exercise of the police powers of the State of Washington to enforce its tax laws.

### Conclusion

Section 412a of Title 25 U.S.C. does not immunize the plaintiffs Comenout and Matheson from the State of Washington's excise tax on cigarette and tobacco products. The State's collection procedure does not violate due process. Therefor the injunction will not lie.

This opinion shall constitute this three-judge court's findings of fact and conclusions of law as provided in Fed.R. Civ.P. 52(a).

### SUPPLEMENTAL OPINION

The plaintiffs have moved this three-judge court to reconsider its opinion of November 27, 1974, denying injunctive relief against searches for and seizures of untaxed and unstamped cigarettes on the tax exempt off-reservation § 412a lands [1] of the plaintiff Edward Comenout.

In Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), the Supreme Court decided that a tribal business venture on tax exempt off-reservation § 465 lands [2] was not exempt from a state gross receipts tax. The plaintiffs continue to assert that there is a crucial difference between the § 465 lands in *Mescalero* and the § 412a lands in this case. The difference, according to the plaintiffs, is found in the language in § 412a designating those lands as "federal instrumentalities." Section 465 does not contain a similar designation.

We rejected this distinction in part because we thought that § 465 lands were probably federal instrumentalities, because, as stated in our opinion, tax exempt off-reservation lands "have been and are now generally considered federal instrumentalities, whether or not they have been specifically identified as such by statutes."

The plaintiffs vigorously attack this generalization as applied to § 465 lands and characterize the above statement as a "fundamental error." The plaintiffs argue that a characterization of § 465 lands as federal instrumentalities squarely conflicts with the holding of Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114, which provides as follows:

The Indian Reorganization Act of 1934 neither requires nor counsels us to recognize this tribal business venture as a federal instrumentality. Congress itself felt it necessary to address the immunity question and to provide tax immunity to the extent it deemed desireable [sic]. There is, therefore, no statutory invitation to consider projects undertaken pursuant to the Act as federal instrumentalities generally and automatically immune from state taxation. 411 U.S. at 151, 93 S.Ct. at 1271.

This passage pertains to the characterization of the tribal business venture,

1. 25 U.S.C. § 412a.

2. 25 U.S.C. § 465.

not to the nature of the land on which the venture is conducted. We do not think that our characterization of § 465 lands as federal instrumentalities is incorrect.

However, we take the opportunity to point out that our decision does not necessarily rest on whether or not § 465 lands in *Mescalero* were federal instrumentalities. The decision rests on the more fundamental point that the phrase "federal instrumentalities" as used in § 412a pertains to the land and not to business activities conducted on the land. This conclusion should be clear from the face of the statute, which makes no reference to business activities. Furthermore, the conclusion that Congress did not intend to designate anything more than the land itself as an instrumentality is buttressed by an examination of the judicial and legislative history of the taxation of Indian lands which resulted in the enactment of § 412a.[3]

Certain Indian lands have long been protected from state taxation under the federal instrumentality doctrine. F. Cohen, Handbook of Federal Indian Law, 254, 255 (1942). In United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532 (1902), the Supreme Court declared that lands held by Indian allottees subject to restrictions on alienation under the General Allotment Act of February 8, 1887, 24 Stat. 389, were tax exempt instrumentalities. The Court said at 437, 438, 23 S.Ct. at 480:

> [T]he holding of [allotment lands] by the United States under the act of 1887 . . . is part of the national policy by which the Indians are to be maintained as well as prepared for assuming the habits of civilized life, and ultimately the privileges of citizenship. To tax these lands is to tax an instrumentality employed by the United States for the benefit and control of this dependent race, and to accomplish beneficent objects with reference

to a race of which this court has said that "from their very weakness and helplessness, so largely due to the course of dealing of the Federal Government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power. . . ." United States v. Kagama, 118 U.S. 375, 384, 6 S.Ct. 1109 [30 L.Ed. 228].

Primarily the Supreme Court was concerned that, if taxed, the Indian lands would be sold at state tax sales:

> To say that these lands may be assessed and taxed by the county . . . under the authority of the state, is to say they may be sold for the taxes, and thus become so burdened that the United States could not discharge its obligations to the Indians without itself paying the taxes imposed from year to year, and thereby keeping the lands free from incumbrances. *Id.* at 438, 23 S.Ct. at 480.

The *Rickert* decision did not solve the perplexing problem of other Indian lands, which, like the Comenout lands, were purchased out of Indian trust funds and contained restrictions against alienation similar to lands held under the General Allotment Act. In Shaw v. Gibson-Zahniser Oil Corp., 276 U.S. 575, 578, 48 S.Ct. 333, 72 L.Ed. 709 (1928), the Supreme Court held these non-allotment lands were not tax exempt in the absence of a congressional declaration:

> [T]he lands now in question, . . . are not such instrumentalities of the government as will be declared immune from taxation in the absence of an express exemption by Congress and that the mere act of the Secretary in imposing the restriction is not the exercise of any power which may reside in Congress to exempt them from taxation.

The Meriam report of 1928 on "The Problem of Indian Administration" de-

---

3. The relevant history is found in F. Cohen, Handbook of Federal Indian Law 260–261 (1942).

scribed the problem caused by the taxability of these lands:

> Since the Indian owner [of lands purchased with restricted funds], on account of his lack of ready funds or his insufficient sense of public responsibility, either cannot or will not pay taxes, the result is that the lands purchased for his permanent home are speedily slipping from him and he himself is becoming a homeless public charge. This unfortunate situation is rendered more acute because the terms of the deeds prohibit alienation by voluntary act, and thus the Indian owner is not able either to mortgage or sell his lands to secure for himself the interest that he may have in the land over and above the delinquent taxes.

The report recommended legislation be secured expressly conferring an exemption.

In response to this situation, § 412a was enacted in 1936. The report of the Senate Committee on Indian Affairs made the following statement of the purpose of the 1936 act:

> The said act of June 20, 1936 (49 Stat.L. 1542) was designed to bring relief and reimbursement to Indians who by failure to pay taxes have lost or now are in danger of losing lands purchased for them under supervision, advice, and guidance of the Federal Government, which losses were not the fault of the Indians, but were purchased with the understanding and belief on their part and induced by representations of the Government that the lands be nontaxable after purchase. (Senate Report No. 332, 75th Cong., 1st Sess.)

█ The language of § 412a, the history of developments leading up to its enactment, as well as the Senate Committee on Indian Affair's pronouncement on its purpose, leaves no doubt that the designation of § 412a lands as tax exempt federal instrumentalities pertains to the specific problem of tax sales of Indian lands. There is no room for an inference that the legislature intended to designate Indian commercial activities conducted on the land as federal instrumentalities, much less make such activities tax exempt. The Supreme Court has made it clear that as a general rule tax exemptions shall not be granted by implication. Helvering v. Mountain Producers Corp., 303 U.S. 376, 384–385, 58 S.Ct. 623, 82 L.Ed. 907 (1938). This principle applies to taxation of Indians. Oklahoma Tax Commission v. Texas Co., 336 U.S. 342, 365–366, 69 S.Ct. 561, 93 L.Ed. 721 (1949); Mescalero Apache Tribe v. Jones, 411 U.S. 145, 156, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). We find no reason to alter our conclusion that cigarette sales on the § 412a lands of Edward Comenout are not tax exempt.

The recent case of Antoine v. Washington, 420 U.S. 194, 95 S.Ct. 944, 43 L. Ed.2d 129 (1975), United States Supreme Court Bulletin B–1129, has been considered and has no application to the instant case.