**UNITED STATES of America, Appellee,**

v.

**CITY OF ADAIR, Appellant.**

**No. 75–1608.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1976.
Decided Aug. 10, 1976.

Curt L. Sytsma, Des Moines, Iowa, for appellant; Robert H. Helmick, Des Moines, Iowa, on the briefs.

Michael A. McCord, Atty., Appellate Section, U. S. Dept. of Justice, Washington, D. C., for appellee; Walter Kiechel, Jr., Asst. Atty. Gen., Washington, D. C., Allen L. Donielson, U. S. Atty., James R. Rosenbaum, Asst. U. S. Atty., Des Moines, Iowa, Edmund B. Clark and Jacques B. Gelin, Attys., Dept. of Justice, Washington, D. C., on the briefs.

Before BRIGHT and HENLEY, Circuit Judges, and REGAN,* District Judge.

HENLEY, Circuit Judge.

The City of Adair, Iowa, hereafter referred to as the City, appeals from a summary judgment for the United States on

---

* The Honorable John K. Regan, United States District Judge, Eastern District of Missouri, sitting by designation.

the question of the immunity of the Commodity Credit Corporation, hereafter referred to as the CCC, from special assessments levied against its real property located within the City.

The facts are undisputed. Property owned by the CCC is within a special improvement district of the City and the City levied special assessments against property within the district in full compliance with the laws of Iowa. The total assessment against the CCC's property was $5,032.00 and in 1973 the CCC paid the City one-tenth of that amount, $503.20. Subsequently the United States government made demand for a refund and the City refused. The government sued in behalf of the CCC for a judgment of $503.20 plus costs and the City counterclaimed for the balance of the assessment. There were cross motions for summary judgment and the government prevailed.

The district court found for the government on two grounds. First, it found that the laws of the State of Iowa[1] proscribe taxation of property "owned by the United States" and that the property in question is within that category. The court distinguished an earlier decision of the Iowa Supreme Court on grounds that the property in that case, a bridge, was not "owned by the United States" merely because of a federally created bridge commission. *See City of Dubuque Bridge Commission,* 232 Iowa 112, 5 N.W.2d 334, *cert. denied,* 317 U.S. 686, 63 S.Ct. 259, 87 L.Ed. 549 (1942).

The second basis for the district court's holding was that the CCC enjoys governmental immunity from special assessments despite a congressionally imposed waiver of immunity from property tax.[2] This ruling was based upon the holding in *Board of Directors of Red River Levee Dist. No. 1 of Lafayette County, Ark. v. Reconstruction Finance Corp.,* 170 F.2d 430 (8th Cir. 1948), wherein this court, interpreting language in the Reconstruction Finance Corporation Act identical to that waiving the CCC's immunity from real property tax, held that the waiver did not extend to special assessments. The district court did concede that if it were addressing the question as one of first impression, it would be inclined to extend this congressional waiver of real property taxation to special assessments. The court reasoned that since special assessments are imposed as a result of improvements which have enhanced the value of the property, they are not "burdensome" as are ordinary taxes.

The district court ordered the City to refund the installment paid on the assessment and the City appeals. We affirm.

Immediately it seems that if the district court correctly found that Iowa law does not permit such a special assessment to be levied against the CCC's real property, it is unnecessary to reach the question whether the *Red River* holding is dispositive. However, we note that in their Agreed Statement as the Record on Appeal, the parties recognize that if federal law permits such a special assessment, then Iowa law permits it. In *Van Brocklin v. State of Tennessee,* 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845 (1886), the United States Supreme Court discussed similar statutes in other states which proscribe state and local taxation of property "owned by the United States." These provisions were conditions for admission of these states to the union, and the

---

1. Iowa Code § 391A.2 provides in relevant part:
 Municipalities shall have the power to construct, and repair all public improvements within their limits, . . . and assess the cost thereof to private property within the municipality . . . .
 Section 391A.1(17) defines "private property" as "all property within the district except streets, property owned by the United States and property owned by the municipality."

2. 15 U.S.C. § 713a-5 provides in part as follows:

 . . . The Commodity Credit Corporation, including its franchise, its capital, reserves, and surplus, and its income shall be exempt from all taxation imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that any real property of the Commodity Credit Corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

Court noted that they "are equivalent to each other" and that "they are but declaratory, and confer no new right or power upon the United States." 117 U.S. at 167, 6 S.Ct. at 679.

 We characterize the primary issue in this appeal as being whether the holding in *Red River* is dispositive and find that it is. In that case the levee district, in compliance with Arkansas law, levied an assessment for special improvements against a pipeline owned by the Reconstruction Finance Corporation and filed suit in rem for enforcement of a lien against the RFC's pipeline when the assessment was not paid. The RFC filed a motion to dismiss on grounds that its pipeline property was exempt from special assessments. The district court granted the motion and was affirmed on appeal.

The *Red River* panel reasoned that the state could not tax "property of the United States or any of its instrumentalities" without the consent of Congress. 170 F.2d at 431. It further held that congressional consent to such taxation "should clearly and unequivocally confer the privilege." *Id.* at 433. Determining that the pipeline constituted "real property" within the meaning of Arkansas law, and noting that the Reconstruction Finance Corporation Act exempted the RFC from all state taxation except real property taxes to the extent that other real property is taxed, this court held that congressional consent to real property taxation did not extend to special assessments.[3] This reasoning was based upon the long recognized distinction between taxation and special assessments, discussed in *Illinois Central R.R. v. Decatur*, 147 U.S. 190, 13 S.Ct. 293, 37 L.Ed. 132 (1893).[4]

The City has submitted several arguments why the holding in *Red River* should not be controlling. Among its contentions are that issues presented to us for consideration were never before the *Red River* panel and, therefore, that decision should set no precedent.

The City further points out that even though the result it urges is the same as that urged by the levee district in *Red River*, the legal theories it relies upon, such as the distinction between taxation and special assessments, were not relied upon by the levee district. We have considered all the arguments submitted by the City as reasons for disregarding *Red River* as precedent and find them unpersuasive.

I.

The City points out that there is a line of authority which existed prior to the holding in *Red River*, but which allegedly was not considered by that panel, to the effect that governmental immunity is not necessarily implied where Congress has not granted express consent. This line of cases includes *R.F.C. v. Menihan Corp.*, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941); *Keifer & Keifer v. R.F.C.*, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); *United States v. Edgerton & Sons*, 178 F.2d 763 (2d Cir. 1949); *Asheville Mica Co. v. Commodity Credit Corp.*, 239 F.Supp. 383 (S.D.N.Y.1965), aff'd, 360 F.2d 931 (2d Cir. 1966), all cited by the City.

The City urges that absent a showing of burden on the United States no immunity will be implied[5] and it asserts that there is no burden on the CCC because the special assessments are levied for improvements or benefits that have enhanced the value of

---

**3.** After the *Red River* decision Congress amended the Reconstruction Finance Corporation Act to waive the RFC's exemption from special assessments against its real property. 15 U.S.C. § 607.

**4.** In *Decatur* the taxpayer was exempt by law from property taxation but was held not to be exempt from special assessments.

**5.** In *Graves v. N. Y. ex rel. O'Keefe*, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939), the Court found that there was no unconstitutional burden on the federal government for the State of New York to impose an income tax upon an employee of the Home Owners' Loan Corporation who was a state resident, and noted that the principle that the employee's burden is passed on to the government is no longer tenable.

the property. *Illinois Central R.R. v. Decatur, supra.*

None of the foregoing cases directly supports the position that immunity from real property taxation or special assessments should not be implied from the Constitution where Congress has not granted express consent. *Keifer & Keifer, Menihan* and *Asheville Mica* all concern amenability of government instrumentalities to suit or to the incidents of suit. *Edgerton & Sons* concerned an interpretation of the CCC charter as a Delaware corporation and did not concern immunity from real property taxation or special assessments. *Graves v. N. Y. ex rel. O'Keefe,* 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939), involved the question of taxation of the income of a federal employee.

The position that immunity from taxation and special assessments is implied is supported by a number of cases on sovereign immunity from taxation, the first of which was *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). *See also, e. g., United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); *Mayo v. United States,* 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943); *Penn Dairies v. Milk Control Com'n.,* 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748 (1943); *Van Brocklin v. State of Tennessee, supra.*

■ Moreover, congressional consent must be clear, express and affirmative. *See, e. g., United States v. Allegheny County, supra,* 322 U.S. at 177, 64 S.Ct. 908; *Mayo v. United States, supra,* 319 U.S. at 448, 63 S.Ct. 1137; *Kern-Limerick, Inc. v. Scurlock,* 347 U.S. 110, 122, 74 S.Ct. 403, 98 L.Ed. 546 (1954). And congressional waivers from tax exemptions must be strictly construed. *See Oklahoma v. Barnsdall Corp.,* 296 U.S. 521, 56 S.Ct. 340, 80 L.Ed. 366 (1936). *See also Rohr Aircraft Corp. v. San Diego County,* 362 U.S. 628, 80 S.Ct. 1050, 4 L.Ed.2d 1002 (1960), and *R.F.C. v. State of Texas,* 229 F.2d 9 (5th Cir.), *cert. denied,* 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442 (1956).

■ We do not agree that the question of immunity here turns on a determination of the burdensome or beneficial nature of the assessment. Any authority possessed by the state to tax property owned by the CCC is derived from congressional consent to waive immunity. *Cf. Maricopa County v. Valley Bank,* 318 U.S. 357, 361, 63 S.Ct. 587, 87 L.Ed. 834 (1943). The immunity enjoyed by the United States "grows out of the supremacy of the Federal Government and the necessity that it be able to deal with its own property free from any interference or embarrassment that state taxation might impose." ·*West v. Oklahoma Tax Commission,* 334 U.S. 717, 723, 68 S.Ct. 1223, 1226, 92 L.Ed. 1676 (1948), citing *McCulloch v. Maryland, supra.*

## II.

Also before us and allegedly not considered by the *Red River* panel is whether the CCC's status as a corporation created and owned by the government results in its having different privileges and powers than the government itself and therefore renders its real property amenable to local special assessments in absence of a specific congressional exemption.

■ It is obvious that generally government corporations do in fact enjoy powers and privileges different from the United States because Congress, in establishing these corporations, limits their powers and privileges in statutes such as the one before us now. Yet the fact that title to property is held in the name of a federal instrumentality instead of in the name of the United States does not alter the doctrine of implied immunity, which can be waived only by congressional consent. *See New Brunswick v. United States,* 276 U.S. 547, 555, 48 S.Ct. 371, 72 L.Ed. 693 (1928); *United States v. City of Milwaukee,* 140 F.2d 286, 288 (7th Cir.), *cert. denied,* 322 U.S. 735, 64 S.Ct. 1047, 88 L.Ed. 1568 (1944); *United States v. County of San Diego,* 249 F.Supp. 321 (S.D. Cal.1966).

We find that the *Red River* panel did in fact consider the status of the RFC as a government corporation and properly found implied immunity from special assessments.

The opinion interprets the statute governing the exemptions and waivers of exemptions from taxation which Congress had determined for that corporation. Before us now is identical statutory language from which we must determine the very issue before the *Red River* court, and we are not prepared to overrule *Red River* on grounds that the opinion fails to consider the distinction between the privileges of the United States itself and a corporation created, owned and controlled by it.

We further find no merit in the City's contention that our decision should not follow *Red River* on grounds that the Government Corporation Control Act applies to the CCC but not to the RFC.

### III.

The City raises the question whether the tenth amendment to the Constitution prohibits the CCC from claiming immunity from local special assessments against its real property. It argues that the holding in *McCulloch v. Maryland, supra,* which recognized a constitutional immunity from a tax on the operations of the Bank of the United States, acknowledged the right of the state to tax the real property owned by the Bank to the extent that it taxes other real property. This point was also noted in *Osborn v. United States Bank,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824); *Railroad Co. v. Peniston,* 85 U.S. (18 Wall) 5, 21 L.Ed. 787 (1873); and *Van Brocklin v. State of Tennessee, supra.*[6]

Admittedly *McCulloch* seems to make clear, in dictum, the principle that a tax on the real property of a government instrumentality is not constitutionally prohibited because it is not a tax on the operations or means of the federal government. This principle has been obfuscated, however, in the Supreme Court's holding in *Clallam County v. United States,* 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328 (1923), where county and state taxes on real property owned by

the United States Spruce Production Corporation, a wholly owned government corporation created for the war effort, was held to amount to a taxation of the "means" of the government and was constitutionally prohibited. There is language in the opinion pointing out that the corporation existed solely for "producing a weapon for the war," and was "not like the case of a corporation having its own purposes as well as those of the United States and interested in profit on its own account." 263 U.S. at 345, 44 S.Ct. at 122. *Cf. New Brunswick v. United States, supra.*

Much like the corporation in *Clallam County,* the RFC receives its money from the government, does not exist for its own profit and is "an agency selected by Government to accomplish purely Governmental purposes." *Cherry Cotton Mills v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946), citing *Inland Waterways Corp. v. Young,* 309 U.S. 517, 524, 60 S.Ct. 646, 84 L.Ed. 901 (1940).

As for the instant case, the nature of the CCC is such that it, like the RFC, exists for a federal purpose. Its purpose is the administration of farm programs and it uses the real property which is the subject of this suit in administration of a farm program. As pointed out by the Supreme Court in *Rainwater v. United States,* 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958), the CCC is financially dependent upon public funds and all its gains become part of the public treasury. It is so closely controlled in accordance with the Government Corporation Control Act that "little more than a corporate name remains to distinguish it from the ordinary government agency." 356 U.S. at 592, 78 S.Ct. at 948.

■ In light of the decision in *Clallam County,* we are unwilling to hold that there is tenth amendment protection extending to special assessments against real property owned by government instrumentalities which do not exist for their own profit and

---

**6.** Even though we reject this argument for other reasons, we note that *McCulloch* and the other cases noting the right of the state to tax the real property of a government instrumentality do not concern the right to levy special assessments, and we point out that the City has emphasized the difference between taxation and special assessments.

whose sole purposes are to carry out federal functions.

## IV.

The City relies in part upon *Swords v. Nutt*, 11 F.2d 936 (9th Cir. 1926), in which the court held that a statute similar to the one before us[7] which waived immunity from property taxation for real estate owned by national banks, also waived immunity from special assessments. The court reasoned that congressional intent was to give national banks the power to own property with the "usual incidents of ownership," and that there was no indication that Congress intended to absolve the banks from paying such special assessments. 11 F.2d at 937.

We agree that the *Swords* decision is a forceful one for the City's position. However, we do not overrule *Red River* on the strength of *Swords*. The *Swords* panel perhaps did not actually require that the waiver be express, even though it recognized that "national banks are subject to state taxation only as Congress expressly permits." *Id.* at 936. Rather, the *Swords* panel seemed willing to look to apparent congressional intent instead of to express congressional mandate.

The characteristics of a national bank as a government instrumentality differ considerably from those of the CCC. The *Swords* opinion points out that national banks are "[a]t most . . . instrumentalities or agencies authorized by the United States to be used to aid the government in the administration of an important branch of the public service. (Citation omitted.) But the government has no property interest in them, nor has it control of their activities farther than is declared by general statutes." *Id.* at 937. We note that unlike the CCC, national banks have private share-

holders and exist for their own profit. And their employees are not paid by the federal government.

## V.

 While we affirm the district court's judgment on the basis of this court's holding in *Red River*, unlike the district court we would not reach a different result were we addressing this question as one of first impression. We believe that public policy demands that the immunity of the United States from state interference extends not only to "burdensome" taxation but also to "benefits" conferred without express federal consent.

The judgment is affirmed.

---

7. The statute, later codified in 12 U.S.C. § 548(a), which has since been amended, read as follows:

Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same· extent, according to its value, as other real property is taxed.

Language in the RFC Act (which was interpreted in *Red River*) was taken from statutes, including this one, governing financial institutions. *Rohr Corp. v. San Diego County*, 362 U.S. 628, 630, 80 S.Ct. 1050, 4 L.Ed.2d 1002 (1960).