*1246
MEMORANDUM OPINION

MICHAEL, Senior District Judge.
In 1992, defendant was convicted before this court of conspiracy to distribute marijuana and cocaine, in violation of 21 U.S.C. § 846; engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; possession of marijuana and cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(b)(1); two counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1); and conspiracy to obstruct justice, in violation of 18 U.S.C. § 371.[1] Defendant was sentenced to 300 months’ imprisonment and ordered to forfeit certain property under 21 U.S.C. § 853(a). On appeal, the Fourth Circuit reversed defendant’s conviction under § 848, finding that “the evidence did not prove beyond a reasonable doubt that Michael [Shifflett] organized, supervised, or managed five or more people as required for a conviction.” United States v. Shifflett, No. 93-5693, slip op. at 5, 1995 WL 125506 (4th Cir. Mar. 23, 1995). Accordingly, because defendant was sentenced on the basis of his § 848 conviction, the case was remanded for resentencing.[2] Moreover, the court of appeals reversed and remanded the forfeiture order so that the court might “perform a proportionality or ‘instrumentality’ review.” Id. at 6. As a result, this issue is also before the court on remand.
Defendant now challenges the amended presentence report that the court will use to determine the appropriate sentence.[3] In addition, defendant argues that the forfeiture of certain property would be constitutionally excessive and disproportionate to the crime. Finding no merit in these objections, this court adopts the amended presentence report and holds that the forfeiture of defendant’s property is constitutionally proper.
I. Objections to the Presentence Report
Defendant objects to sentencing him on the basis of the amended presentence report, which he argues miscalculated his base offense level and improperly gave him a four-level upwards adjustment for his role in the offense.
A. Base Ojfense Level
Defendant urges the court to undertake de novo review to determine the appropriate base offense level under the sentencing guidelines. The base offense level is determined by calculating the total weight of all the drugs for which defendant may be held responsible, in addition to any unexplained wealth in defendant’s • possession. Defendant explains that he did not challenge the drug weight calculations during his initial sentencing because the drug weights were irrelevant to the determination of an appropriate sentence under § 848. He now argues that the probation officer improperly determined the base offense level by relying on statements made outside the courtroom and by miscalculating defendant’s unexplained wealth.
Although the court did not use the drug weights and base offense level to sentence defendant under § 848, it nevertheless accepted the presentence report as accurate and correct. Defendant selectively quotes . from the July 28, 1993 sentencing hearing to argue that the court did not make any findings regarding drug amounts. See Reply to Government’s Memorandum Regarding Re-sentencing at 2 (quoting the court as stating during sentencing that “under the CCE thing, the court is not going to pay any attention to those drug amounts”). This reading of the hearing transcript misstates the court’s July 28 findings. In the very same discussion from which defendant quotes, the court stated: “the court finds *1247 that the probation officer has properly prepared the presentence report in accordance with the regulations under which he operates. The court finds no error in that preparation and consequently will overrule the objections filed by Mr. Mika.” July 28, 1993 Transcript of Sentencing Hearing at 18-19. While the court did not need to consider drug weights in sentencing defendant under § 848, it nevertheless found that the probation officer’s calculations were correct. This determination remains binding on remand because it was left undisturbed by the Fourth Circuit.
Moreover, the court notes that defendant contested the calculation of drug weight at sentencing, but only as to the amount of unexplained wealth that was converted into drug weight for the purposes of determining the total weight. The probation officer concluded that defendant was responsible for a total of 2130.82 kilograms of marijuana. He arrived at this amount by combining (1) the weight of the marijuana for which defendant could be held accountable, (2) the weight of the cocaine for which defendant could be held accountable converted into drug weight in terms of marijuana, and (3) the $164,446.46 in unexplained wealth converted into drug weight in terms of marijuana. At the 1993 sentencing hearing, defendant conceded the correctness of the calculations of actual drug weight, stating: Id. at 13. Clearly defendant contested only the probation officer’s calculation of defendant’s unexplained wealth, implicitly accepting the calculation of actual drug weight. Nor did defendant challenge the calculation of actual drug weights in his objections to the original presentence report. See Defendant’s July 6, 1993 Objection to Presentence Report. Accordingly, defendant should not be permitted to challenge on remand the factual findings as to the actual quantity of drugs for which defendant was responsible.
I have no objection to the way [the probation officer determined drug weight]. However, I do object to the fact that he didn’t take into consideration any testimony by Mr. Shifflett that he had saved money over the years and put that money into this house or the testimony of other people, including relatives and friends, that did work free and lent him money to buy things and his testimony that he owes a substantial amount.
' [3,4] Even if the court were inclined to reopen the issue of drug weight calculations, it would nonetheless find that the base offense level was properly calculated. There is no merit in the argument that the court may not rely on the presentence report because the probation officer’s determination of drug weight was based, in part, upon hearsay information. “United States courts have a long history of using reliable hearsay for sentencing. ‘[T]he trial court may properly consider uncorroborated hearsay evidence that the defendant has had an opportunity to rebut or explain.’ ” United States v. Terry, 916 F.2d 157, 160-61 (4th Cir.1990) (alteration in original) (quoting United States v. Shepherd, 739 F.2d 510, 515 (10th Cir.1984)); see also United States v. Falesbork, 5 F.3d 715, 722 (4th Cir.1993) (same). Defendant argues that by his calculations, testimony at trial only supported a finding that defendant was responsible for a total marijuana equivalency weight of 742.603 kilograms. In making this determination, defendant at a minimum ignores testimony that he was also responsible for an additional fifty pounds of marijuana obtained by co-defendant Sipe in Texas. After considering the evidence presented at trial, the original and amended presentence reports, and defendant’s objections, this court would, if it returned to the issue, conclude that the probation officer properly calculated the amount of drugs for which defendant should be held responsible.[4] *1248 Accordingly, using a base offense level of 32 to sentence defendant is appropriate and will not be altered on remand.
B. Role in the Offense
Defendant also objects to the Addendum’s four-level upwards adjustment for his role in the offense. The original presentence report did not contain an upwards adjustment under § 3B1.1, primarily because the conviction under § 848 already envisioned and punished defendant for his role in the offense. See 1992 U.S.S.G. § 2D1.5 commentary at 96. Nevertheless, when the Fourth Circuit reversed defendant’s' conviction under § 848, the presentence report was amended to take into account the defendant’s role in the conspiracy for which he was being punished. Defendant argues that the upwards adjustment is inconsistent with the Fourth Circuit’s reversal of the § 848 conviction and that at most defendant can be subject to only a two-point enhancement under § 3Bl.l(c) for his role in the offense.
The Fourth Circuit found that although defendant’s criminal activity involved seven people, only three were supervised by defendant, the remainder simply having purchased drugs from defendant for resale to others. Shifflett, No. 93-5693, slip op. at 6. Defendant argues that the individuals to whom defendant merely sold drugs cannot be counted for the purposes of determining the appropriate role in the offense adjustment. He cites cases in the First and Third Circuits for the proposition that buyers and sellers cannot be counted as “participants” for the purposes of a § 3Bl.l(a) enhancement. See United States v. Castellone, 985 F.2d 21, 26 (1st Cir.1993); United States v. Belletiere, 971 F.2d 961, 969-70 (3rd Cir.1992). The government, however, contends defendant’s supervision of three individuals is sufficient to justify giving defendant four points for his role in the offense because defendant is not required to have supervised all of the participants in the criminal activity. See United States v. Ward, 68 F.3d 146, 151 (6th Cir.1995), cert. denied, — U.S. -, 116 S.Ct. 1028, 134 L.Ed.2d 106 (1996). In Ward, a ease which posed an identical situation to the instant case, the Sixth Circuit observed that “it is not necessary for the defendant to have organized or led four or more participants. If the defendant organized or led at least one participant, and if the activity involved five or more people or was otherwise extensive, then four points are added.” Id.
Although the Fourth Circuit held in the instant case that there was insufficient evidence to show that defendant supervised or organized five or more people in violation of § 848, it is not inconsistent on remand to upwardly adjust defendant’s total offense level for his role in the offense. See id. (affirming district court’s role in the offense adjustment on remand after reversal of § 848 conviction). Under § 3Bl.l(a), a defendant’s total offense level may be increased by four if it is shown that “the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.” 1995 U.S.S.G. § 3Bl.l(a) (emphasis added). Defendant challenges the instant enhancement arguing that there is insufficient evidence to support a finding that there were five or more participants. He fails to recognize, however, that a defendant may receive a four-point enhancement for his role in the offense if the criminal activity was “otherwise extensive.”
“In assessing whether an organization is ‘otherwise extensive,’ all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.” 1995 U.S.S.G. § 8B1.1 commentary at 231. As the Seventh Circuit observed, “there is no prescribed minimum needed to permit an enhancement under § 3B1.1. All that is required to find that a scheme is ‘otherwise extensive’ is that the defendant directed at least one criminal participant.” United States v. Miller, 962 F.2d 739, 745 (7th Cir.1992); see also United States v. Camper, 66 F.3d 229, 231 (9th Cir.1995) (noting that “[t]o the extent that defen *1249 dant does play a ‘supervisory role’ in relation to other participants, he need only exercise authority over one and not all of the other participants in order to merit the adjustment”). Accordingly, the Fourth Circuit has, in the past, upheld a four-point enhancement for a defendant’s role in the offense where the conduct of the defendant and three other participants involved and affected others who did not qualify as participants. See United States v. Ellis, 951 F.2d 580, 585 (4th Cir.1991), cert. denied, 505 U.S. 1220, 112 S.Ct. 3030, 120 L.Ed.2d 901 (1992) (finding criminal activity to be “otherwise extensive” where the defendant and three other participants used corrupt means to obtain the passage of favorable legislation by influencing “lobbyists, legislators and their staffs”).
“District courts are ... free to examine factors in addition to headcount to justify a finding that a given criminal activity is otherwise extensive.” United States v. Briscoe, 65 F.3d 576, 590 (7th Cir.1995) (quoting United States v. Tai, 41 F.3d 1170, 1175 (7th Cir.1995)). In the instant case, defendant led three individuals in criminal activity that involved at least five people — defendant, the three individuals whom he supervised, and the remaining individuals who purchased drugs from defendant for resale to others. Defendant is responsible for a drug trafficking business that began in the 1970s and continued into the early 1990s. During that time, defendant introduced a significant amount of cocaine and marijuana into the Charlottesville and Browns Cove communities, orchestrating the importation of cocaine and marijuana from Florida and Texas, respectively. “This evidence of repeated transactions constitutes extensive activity for the purposes of the Guidelines.” Id. Nevertheless, further justification for the enhancement is garnered from defendant’s control and supervision of Raymond Sipe and Jean Morris, both of whom acted as couriers for defendant. In addition, defendant sold and fronted drugs to at least four other individuals who distributed the drugs to individuals throughout the Charlottesville area. Defendant also loaned Wilson Steppe money in order that Steppe might post bond for one of his customers. Finally, defendant persuaded several family members to help conceal the proceeds of his illegal acts. This widespread and far-reaching criminal activity clearly was such that it may be characterized as “otherwise extensive,” thus bringing it within the purview of a § 3Bl.l(a) enhancement. Accordingly, a four-point upwards adjustment is appropriate to reflect defendant’s role in the offense.
II. Forfeiture
In the instant case, the government seeks the criminal forfeiture of (1) defendant’s house and eighteen acres of land; (2) a 1989 Ford pickup truck; and (3) two bulldozers. The jury found that these items were forfei-table, either as proceeds or instrumentalities.[5] This court must determine whether their forfeiture would be proportional to the crime. See Shifflett, No. 93-5693, slip op. at 6. The government, however, argues that the court need not perform a proportionality analysis if the items to be forfeited are the proceeds of defendant’s crimes. August 2, 1996 Motion for Final Decree of Forfeiture at 2-3 (citing United States v. Wild, 47 F.3d . 669 (4th Cir.), cert. denied, — U.S. -, 116 S.Ct. 128, 133 L.Ed.2d 77 (1995)). Because of the conflicting Fourth Circuit opinions in this area, the court will endeavor to explain why such analysis is required.
During oral argument, this court asked counsel to opine on whether this forfeiture was taking place in the context of an in rem or an in personam proceeding. Counsel for defendant refused to address the issue, but his brief appears to suggest that he believes this is an in rem action. See Defen *1250 dant’s August 2, 1996 Memorandum on Proportionality Review Regarding Forfeiture of Premises at 1 (repeatedly referring to “guilty property”)- The United States argues — correctly, this court, believes — that a proceeding under 21 U.S.C. § 863(a) is an in ’personam action. An action for criminal forfeiture under § 853(a) is a criminal action brought against the defendant himself rather than defendant’s property. Such forfeiture “‘is an in personam proceeding against a defendant in a criminal case and is imposed as a sanction against the defendant upon his conviction.’ ” United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 1218 (10th Cir.1986) (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 191, 193, reprinted in 1984 U.S.C.C.A.N. 3182, 3374, 3376). Pursuant to the decision and analysis set out infra, this court concludes that it must conduct a proportionality analysis of the property to be forfeited, regardless of whether the property facilitated or is the proceeds of the crime, to ensure that the forfeiture of the property would not constitute an excessive fine under the Eighth Amendment.
In many respects, the conclusion that a convicted defendant may retain the proceeds of his crime appears to violate the maxim “crime doesn’t pay.” Nevertheless, in United States v. Borromeo, 1 F.3d 219 (4th Cir.1993), the Fourth Circuit stated that a proportionality analysis was required whenever the government sought to compel the forfeiture of an instrumentality or a proceed of a crime. Id. at 221. In Borromeo, the government sought the forfeiture of a family clinic that was used by a doctor who was convicted of unlawfully prescribing controlled substances. The opinion characterized the forfeiture as a forfeiture of the instrumentality of the crime.[6] Remanding the case to the district court for an excessiveness determination, the court stated that “[i]n the wake of [Austin v. United States, 509 U.S. 602, 113 5.Ct. 2801, 125 L.Ed.2d 488 (1993) ], an inquiry into the proportionality between the value of the instrumentality sought to be forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture would seem to be in order.” Id. at 221. In dictum, however, the court went further, finding that the proportionality review was mandated in the context of a proceeds forfeiture because “the proportional relationship of the value of the proceeds to the harm occasioned may, in a given case, be relevant” to the court’s inquiry into the “amount needed to effectuate the legitimate remedial purposes of the forfeiture.” Id. Accordingly, under the language of Borromeo, a proportionality analysis was indicated both in proceeds forfeitures and in forfeitures of property that facilitated the commission of a crime; i.e., instrumentalities of the crime.
Within a year, however, the Fourth Circuit rejected a proportionality analysis in the context of an in rem proceeding to secure the forfeiture of an instrumentality. United States v. Chandler, 36 F.3d 358 (4th Cir.1994), cert. denied, — U.S. -, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995). The court based its decision on the historical justification for in rem forfeitures; namely, that as an instrumentality of the crime, the property was the offender. The court laid out a three-part test for the analysis of in rem forfeitures, under which a court must consider “(1) the nexus between the offense and the property and the extent of the property’s role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder.” Id. at 365. The first factor set out would assess the property as an instrumentality of the crime. Although the court did not explicitly address the issue of proceeds forfeitures,[7] the logical import of Chandler is to reject any proportionality analysis in the context of an in rem proceeding.
*1251 In the instant ease, the government relies on Wild to support its argument that the proceeds of crime are never subject to a proportionality analysis prior to forfeiture. In Wild, the court distinguished Chandler to hold that in the context of in personam forfeitures, the Eighth Amendment mandated a proportionality analysis with regard to the forfeiture of instrumentalities of the underlying crime. Wild, 47 F.3d at 674. The court, however, rejected Borromeo’s dictum sub silentio, noting that the forfeiture of the proceeds of crime could never be challenged as excessive. Id. at 676. Unfortunately, Wild’s application has been limited by the very Fourth Circuit opinion that remanded the instant case to this court. As the court of appeals explained, “[a] forfeiture which is not proportional to the crime of conviction violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. Our Circuit has held that this rule applies to forfeitures of property which constitutes the proceeds of crime, as well as forfeitures of property which has been used to facilitate a crime.” Shifflett, No. 93-5693, slip op. at 6 (emphasis added) (citing Borromeo, 1 F.3d at 221). In so holding, the court explicitly rejected Wild’s assertion that proceeds were never subject to such analysis, concluding that Wild could not overrule Bor-romeo because “[i]t is of course a well established rule that a subsequent panel is not free to overrule a prior panel.” Id. at 6 n. 2 (citing North Carolina Utils. Comm’n v. FCC, 552 F.2d 1036, 1044 n. 8 (4th Cir.1977)). As a result, the court in Shifflett elevated Borromeo’s dictum to its holding, mandating that this court undertake a proportionality analysis of the proceeds forfeitures in the instant ease. Accordingly, Wild is inapplicable to the extent that it rejected a proportionality analysis of proceeds forfeitures in the context of in personam proceedings.[8]
With the case law thus difficult to reconcile, this court concludes that the only appropriate way to proceed in this case is to undertake a proportionality analysis for both the proceeds and the instrumentalities forfeited. It is noted, however, that a logical approach to a proceeds forfeiture could not support a proportionality analysis. If the asset sought to be forfeited is in fact acquired through investment of funds proceeding from criminal activity, it is as much a part of the criminal activity as the crime itself, simply converted into a different form. Just as we would not undertake a “proportionality analysis” of the crime itself, justifying such an analysis for the proceeds of the crime would be difficult, indeed, to explain.
In determining whether a forfeiture is excessive, a court must inquire
whether the government can exact a fine in the amount of the forfeiture in light of the defendant’s conduct and the offense committed. This inquiry beckons a comparison of the value of the property being forfeited to the gravity of the offense committed by the defendant and the nature and extent of the defendant’s activities.
Wild, 47 F.3d at 676. Although the court in Wild addressed this question only in the context of the forfeiture of an instrumentality of a crime, its application appears similarly required in the case of a proceeds forfeiture.
Turning to the property at issue, the land and the house that the government seeks to have forfeited clearly may be considered instrumentalities in and proceeds of defendant’s drug conspiracy. Over the course of ten years, defendant dealt most of his drugs from the land, hid drugs on the property, and later constructed his house on the land, almost certainly from the proceeds of his drug sales. Defendant argues that he has made improvements to the property since his indictment. Given that defendant has been employed only as a fence builder, it is likely that these improvements were financed, at least in part, by his drug proceeds. Similarly, defendant’s truck is almost certainly financed by the proceeds of defendant’s crimes, and in its use for hauling *1252 marijuana was also an instrumentality of the crime. It was regularly used in the commission of the instant offenses: Defendant used the truck to transport and sell cocaine, as well to set up a marijuana deal in Texas. In this respect, the truck seems intimately involved in the conspiracy, thus making it an instrumentality. Finally, defendant’s bulldozers can only be characterized as proceeds of defendant’s crimes. See supra note 4.
Application of the sentencing guidelines to this ease counsels that defendant be subjected to a fine of between $25,000 and $6,000,000. See 1995 U.S.S.G. § 5E1.2(e)(4).[9] Because the value of plaintiffs property sought to be forfeited is well within the applicable guidelines range and the statutory limits for a fine, the forfeiture of the property can hardly be held to be grossly disproportionate. See United States v. Bieri, 68 F.3d 232, 238 (8th Cir.1995) (observing that “it cannot be excessive in a constitutional sense to take tainted property from criminals when that ... property is worth far less that the legislatively authorized statutory fines”), cert. denied, — U.S. -, 116 S.Ct. 1876, 135 L.Ed.2d 172 (1996); United States v. 1181 Waldorf Drive, 900 F.Supp. 1167, 1173-74 (E.D.Mo.1995); cf. United States v. Ownby, 926 F.Supp. 558, 563-64 (W.D.Va.1996) (finding that a forfeiture that was greater in value than the fine provided for under the sentencing guidelines was not excessive if within the statutory limits).
Moreover, the sentencing guidelines’ range gives the court wide discretion in determining an appropriate forfeiture. Given the length of the conspiracy, the amount of drugs involved, the number of participants, and the conspiracy’s effect on the community, it cannot be said that the forfeiture of defendant’s land, house, and truck would be a disproportionate punishment, especially considering that all were instrumentalities of the offenses. In addition, to the extent that defendant’s property represents the proceeds of his crimes, the court believes that “the proportional relationship of the value of proceeds to the harm occasioned by a defendant’s criminal conduct” commands a finding that “a close enough connection between the property sought to be forfeited and the criminal activity [exists to] support a forfeiture.” Borromeo, 1 F.3d at 221. Accordingly, the forfeiture of defendant’s property is constitutionally permissible.
For these reasons, defendant’s objections are overruled. Having disposed of all issues other than resentencing that remain before the court, a hearing will be scheduled promptly to undertake such resentencing. An appropriate order shall issue.

FINAL ORDER OF FORFEITURE

On December 11, 1992, this Court entered a preliminary Order of Forfeiture pursuant *1253 to 21 U.S.C. §§ 846, 841(a)(1), and 853, forfeiting certain properties more particularly described herein. On January 27,1993, February 3, 1993, and February 10, 1993, the United States published in a newspaper of general circulation notice of this forfeiture and of the intent of the United States to dispose of the property in accordance with the law and further notifying all third parties of their right to petition the Court within thirty days for a hearing to adjudicate the validity of their alleged legal interest in the property. On January 20, 1994, this court ruled on all ancillary claims filed in the case, before issuing its final order of forfeiture on March 21, 1994. On appeal, the Fourth Circuit Court of Appeals vacated the forfeiture pending this court’s review of the proportionality of the forfeiture. That review having been completed, it is hereby
ADJUDGED AND ORDERED that, for the reasons stated in the accompanying Memorandum Opinion filed this day, the government’s August 2, 1996 “Motion for Final Decree of Forfeiture”, shall be, and it hereby is, granted. Accordingly, all right, title, and interest to the following property, whether real, personal, and/or mixed, is hereby condemned, forfeited, and vested in the United States of America, and shall be disposed of according to law.
(1) All of that lot or parcel of land, together with its buildings, improvements, fixtures, attachments, and easements, consisting of 18.17 acres and 3.38 acres located on Virginia State Route 668, County of Albemarle, State of Virginia, and more fully described below:

PARCEL ONE

all that certain tract or parcel of land together with all improvements thereon and the appurtenances thereunto belonging, lying and being in the White Hall Magisterial District of Albemarle County, Virginia, near the public road leading from Doylesville to Brown’s Gap and on the east side of Doyle’s River, containing 18.17 acres according to a survey and plat thereof made by William E. Roudabush, Inc., C.L.S., dated December 22,1977;
BEING the same property conveyed to Wendy S. McAllister, feme sole, by deed dated June 4, 1990, from Michael R. Shif-flett, unmarried, and recorded in the Clerk’s Office of the Circuit Court of Albe-marle County, Virginia, in Deed Book 1103, page 0124. Parcel One is subject to an easement for ingress and egress to maintain a distribution box and drain field for a septic system granted to Hattie F. Rosson by deed of Thomas W. Frazier and Rosie E. Frazier, his wife, dated November 27, 1967, of record in said Clerk’s Office in Deed Book 437, page 46, and is subject to the rights of the Batten family in a graveyard reserved in Deed Book 290, page 314.

PARCEL TWO

All that certain tract or parcel of land situated in Albemarle County, Virginia, fronting on State Route 810 near Mount Fair, containing 3.382 acres as shown and designated on a plat made by R.O. Snow and Associates, dated February 16, 1973, recorded in said Clerk’s Office in Deed Book 527, page 261.
BEING the same property in all respects conveyed to Wendy S. McAllister, feme sole, by deed dated June 4, 1990, from Michael R. Shifflett, unmarried, and recorded in the Clerk’s Office of the Circuit Court of Albemarle County, in Deed Book 1103, page 0124.
(b) ONE 1989 Ford Truck, VIN 1FTHF26M6KNB19734;
(c) ONE John Deere Tractor-Loader Model 555, Identification Number 181435T;
(d) ONE John Deere Tractor-Loader Model 555, Identification Number 341578T.
The United States Marshal shall record a copy of this Order in the Circuit Court Clerk’s Office of Albemarle County, Virginia, in release of the Memorandum of Lis Pen-dens previously recorded in book 1167, Page 486. This Final Order of Forfeiture shall be recorded in the appropriate records of said Clerk’s Office in the name of the United States Marshal, Larry R. Mattox, authorized agent of the United States of America, as *1254 grantee, and in the name of Wendy McAllis-ter as grantor.
The United States Marshal is farther ORDERED to dispose of the above-described real property according to law, subject only to any valid liens or judgments of record prior to the date of seizure, which shall be paid from the net proceeds from the sale of the defendant’s property, if any. The net proceeds are the amount of money remaining after the United States Marshal has paid all expenses attributable to the seizure, maintenance, forfeiture, and sale of defendant’s property.
Any and all forfeited funds, including but not limited to currency, currency equivalents, and certificates of deposit, as well as any income derived as a result of the United States Marshal’s management of any property forfeited herein, and the proceeds from the sale of any forfeited property, after the payment of costs and expenses incurred in connection with the forfeiture, sale, and disposition of the forfeited property, shall be deposited forthwith by the United States Marshal into the Department of Justice Assets Forfeiture Fund in accordance with 28 U.S.C. § 524(e) and 21 U.S.C. § 881(e).
The court finds that there has been no waiver of sovereign immunity in this case, and it is further ORDERED that the United States of America is exempt from payment of state and local taxes on the defendant’s real property from the date of seizure, July 25, 1991, until such time as the United States disposes of the property. United States v. City of Adair, 539 F.2d 1185, 1189 (8th Cir1976).

. In addition, defendant was acquitted of two other money laundering charges.

. . Because no ex post facto issues are present, the court will employ the 1995 Sentencing Guidelines. See 18 U.S.C. § 3553(a)(4)(A) (directing the court to employ the sentencing guidelines “that are in effect on the date the defendant is sentenced”). Defendant’s sentence range under the current guidelines is identical to that which would have resulted under-the 1992 guidelines that were used in defendant’s initial sentencing proceeding.

. A presentence report dated April 5, 1993 was prepared for the original sentencing hearing. Based on the Fourth Circuit’s decision in this case, the probation officer prepared an addendum to the original report. Both reports are currently before this court.

. The court observes that defendant’s argument is irrelevant as to the propriety of probation officer’s determination of defendant’s unexplained wealth. Theoretically, some of defendant’s unexplained wealth may be derived from the drugs that were attributed to him in the calculation of actual drug weight. Accordingly, if both the wealth and the drugs are counted to derive a total drug weight, some duplication must occur. Defendant argues that this duplication is improper. In addition, defendant argues that some of his unexplained wealth — $50,000 to $60,000 worth — was the result of loans and income from his fence building business. Even if the court were to ignore all of the information as to unexplained wealth and instead calculate the *1248 base offense level on the basis of the actual drug weight involved, defendant's base offense level would remain the same.

. Because a general verdict form was used at trial, it is impossible to determine whether the jury considered each piece of property a proceed or an instrumentality. Nevertheless, the government concedes that "there was no evidence at trial that the two bulldozers were involved in facilitating Shifflett’s cocaine business.” Motion for Final Decree of Forfeiture at 3 n. 1. From this the government concludes, and the court agrees, that the jury believed that the bulldozers represent some of the proceeds of defendant’s drug activity. The jury apparently did not consider defendant's Jaguar to be an instrumentality or a proceed of defendant’s crimes because it did not order the forfeiture of the automobile.

. In this portion of the opinion, the words "in-strumentalities” and "proceeds” have been, where appropriate, italicized so as to highlight the essential differences between the two concepts.

. The jury had found sufficient evidence to conclude that the property was improved by the proceeds of the defendant’s crimes, and thus forfeitable, but the Fourth Circuit did not address the issue on appeal, primarily because the improvements were paid for with drugs, thus facilitating the commission of a crime.

. This court observes that by elevating Borro-meo's dictum to its holding, the court of appeals in Shifflett has essentially done that which it noted as a guiding principle concerning a later panel overruling a former. The court of appeals’s decision in Shifflett can — and perhaps must — be read as overruling the prior panel's decision in Wild that a proportionality analysis is never required in a proceeds forfeiture. Wild's holding does not overrule the dictum of Borro-meo that such an analysis may be proper.

. The court notes that the Addendum to the presentence report lists $7,000,000 as the maximum total fine in the range authorized under the sentencing guidelines. See July 12, 1996 Addendum to Presentence Report ¶ 19. Upon further review, the correct maximum total should be $6,000,000. This change is warranted because ¶ 18 of the presentence report incorrectly states that defendant is subject under count 4 to a fine of $2,000,000 pursuant to 21 U.S.C. § 841(b)(1)(B). In fact, defendant is only subject to a fine of $1,000,000 under 21 U.S.C. § 841(b)(1)(C). The probation officer’s error is excusable because the superseding indictment incorrectly charged defendant with a violation of § 841(a) and § 841(b)(1)(B). In reality, the facts charged only supported a conviction under § 841(a) and § 841(b)(1)(C).- See Apr. 2, 1992 Second Superseding Indictment at 7 (charging that defendant aided and abetted another in the possession with intent to distribute 50.7 grams of cocaine). This typographical error was not present in the original indictment. See Dec. 18, 1991 Indictment at 7 (charging a violation of § 841(a) and § 841(b)(1)(C)). Nevertheless, ''in testing the sufficiency of an indictment, 'it is the statement of facts in the pleading, rather than the statutory citation that is controlling.'" United States v. Hooker, 841 F.2d 1225, 1227 (4th Cir.1988) (quoting United States v. Wuco, 535 F.2d 1200, 1202 n. 1 (9th Cir.), cert. denied, 429 U.S. 978) 97 S.Ct. 488, 50 L.Ed.2d 586 (1976)); see also 1 Charles A. Wright, Federal Practice and Procedure § 124, at 357 & n. 4 (2d ed. 1982). The failure to cite the appropriate statute in an indictment "shall not be ground for dismissal of the indictment ... or for reversal of a conviction if the error or omission did not mislead the defendant to defendant’s prejudice.” Fed. R.Crim.P. 7(c)(3); see also United States v. Cardillo, 473 F.2d 325, 327 (4th Cir.1973). Accordingly, defendant is appropriately penalized under § 841(b)(1)(C), which prescribes a fine of up to $1,000,000 for the distribution of less than 500 grams of cocaine. As a result, defendant’s guidelines fine range is between $25,000 and $6,000,-000.