**OLD BRIDGE OWNERS COOPERATIVE CORP., a New Jersey limited partnership; North County Conservancy, Inc., a New Jersey nonprofit corporation; and Grandview Estates of New Jersey, LP., a New Jersey limited partnership, Plaintiffs,**

**v.**

**TOWNSHIP OF OLD BRIDGE and Old Bridge Municipal Utilities Authority, Defendants.**

Civ. A. No. 95–2539.

United States District Court, D. New Jersey.

Oct. 29, 1997.

---

Dembo & Saldutti by William F. Saldutti, III, Cherry Hill, NJ, for Plaintiffs Old Bridge Owners Co–op. Corp. and Grandview Estates of New Jersey, L.P.

Jamieson, Moore, Peskin & Spicer by Timothy J. O'Neill, Prince, NJ, for Plaintiff North County Conservancy, Inc.

William Ruggiero, Tp. Atty., Tp. of Old Bridge, Old Bridge, NJ, for Defendant Tp. of Old Bridge.

Granta, Wernik & Ziccardi by Louis E. Granta, Matawan, NJ, Miller & Chodzik by W. Lane Miller, East Brunswick, NJ, for Defendant Old Bridge Municipal Utilities Authority.

Podvey, Sachs, Meanor, Catenacci, Hilder & Cocoziello By Steven Firkser, Newark, NJ, for F.D.I.C.

## OPINION

BISSELL, District Judge.

This matter comes before the Court on a motion for partial summary judgment by plaintiffs North County Conservancy, Inc. ("North County") and Old Bridge Partners I, L.L.C. ("OB Partners") on the issue of liability for penalties. The Court is very familiar with the facts of this case, which have been set forth at length in the Court's previous Opinions in this matter. However, a summary of those facts relevant to the disposition of the instant motion is provided herein. The parties to the instant motion are in

substantial agreement as to the relevant facts and agree that summary judgment is the appropriate vehicle for disposition of the motion.

This action involves rights relating to certain real property, formerly known as Sterling Estates and now known as Pine Gate (the "apartment complex"), located in Old Bridge Township, New Jersey. In February 1988, Old Bridge Owners Corp. and Grandview Estates, L.P. ("Grandview") purchased the apartment complex with the intention of converting it to a cooperative. (*See* Segall Cert., ¶ 3). To accomplish this goal, Old Bridge Owners Corp. and Grandview borrowed $12,000,000.00 from First Federal Savings and Loan Association of Roanoke (the "original loan"), which loan was secured by a first mortgage on the apartment complex. (*Id.*) In August 1989, the apartment complex was converted to a cooperative, and title passed to Old Bridge Owners Cooperative Corp. (the "Owners"). (*Id.*, ¶ 4). Grandview retained ownership of the shares of stock and proprietary leases to the 354 apartments. (*Id.*, ¶ 5).

Shortly thereafter, Grandview and the Owners defaulted on the original loan. (*Id.*, 6). In the course of the parties' efforts to refinance, the original loan was split into two separate debts, secured by two separate mortgages. At the end of the day, Grandview and the Owners were unable to meet their debt obligations and, by this time, the loans had been sold or assigned to two federally insured banks: Metro North State Bank ("Metro") and Coreast Savings Bank ("Coreast"). (*Id.*, ¶ 7). In September 1990, the banks entered into an intercreditor priority and subordination agreement pursuant to which Metro became the first mortgagee on the apartment complex and Coreast was relegated to the position of second mortgagee. Metro's first mortgage interests were for the principal sum of at least $9,000,000.00 and Coreast's second position interests were approximately $4,000,000.00.

Both Metro and Coreast thereafter became insolvent. The Resolution Trust Corporation ("RTC") was appointed receiver for Coreast in 1991, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for Metro in 1992. The FDIC prosecuted Metro's first mortgage interests in a foreclosure action in state court and obtained a foreclosure judgment in its favor for $17,497,872.00 in March 1994.[1] The RTC/Coreast interests were not prosecuted in the foreclosure proceeding, and the priority of the Metro interest and size of that obligation rendered the second mortgage interests of RTC/Coreast essentially worthless.

In any event, on or about November 16, 1994, the RTC transferred its interest in the second mortgage to North County. (*Id.*, ¶ 9). The FDIC acquired title to the apartment complex through a sheriffs sale on October 25, 1995. Ordinarily, a private party seeking to acquire title to such property would have had to compete for it in the sheriffs sale or in accordance with the arms length marketing procedures applicable to disposal of FDIC-owned real estate. (*See* O'Meara Dep. at 134–40). However, having acquired the RTC/Coreast interests, North County had become a "party in interest," which status enabled it to acquire the FDIC/Metro interests without competition. (*See* Segall Dep. at 35–36). Upon its acquisition of the RTC/Coreast interests, North County moved to reopen the state court foreclosure judgment, alleging that the RTC/Coreast interests had been defrauded by FDIC/Metro conduct. The FDIC was, thus, in a position to negotiate with North County for a discounted purchase price of the apartment complex.

Shortly after the sheriffs sale took place, North County assigned to OB Partners its contractual right to purchase the FDIC interests. OB Partners then proceeded to purchase the apartment complex at a discounted price ($50,000.00) from the FDIC on November 27, 1995. (*See* Segall Cert., ¶ 10). Meanwhile, claims were accruing for unpaid taxes and interest on the property. During the negotiations between the FDIC and North County regarding the price of the apartment complex, North County learned that the Township of Old Bridge (the "Township") would not compromise these claims.

---

1. Metro commenced the foreclosure action in June 1991, but it was placed in receivership by the FDIC before those proceedings had concluded. In 1992, the FDIC took over the prosecution of that action.

As a result, North County filed the instant lawsuit protesting, *inter alia*, the involuntary tax liens and water and sewer liens filed by the Township against the apartment complex. (Later, OB Partners was named as a plaintiff, as well). North County sought to preserve its attack upon the municipal taxes and, thus, in the contract of sale between OB Partners and the FDIC, the standard language requiring payment of all outstanding taxes at closing was omitted. (*See* Segall Dep. at 56–58). Pursuant to the contractual arrangement, taxes were not paid at closing but, rather, remained open so that North County/OB Partners could continue to challenge their propriety.

Throughout the course of this litigation, the Township has been assessing interest (at the rate of 18 percent per annum) and penalties on the outstanding property taxes. Although North County and OB Partners continue to maintain that a portion of that interest should be characterized as a penalty and that they cannot be liable for this portion of the interest and all of the penalties under 12 U.S.C. § 1825(b)(3), they did not want the amount they already allegedly owed to the Township to continue growing. Thus, on or about May 7, 1997, without prejudice to its right to pursue its claims in this case, OB Partners paid all outstanding property taxes, interest and penalties assessed by the Township, which totaled $2,084,-009.82. (*See* West Cert., Exh. A, wherein a breakdown of the amounts paid is provided).

This Court has ruled that 12 U.S.C. § 1825(b)(1) precludes the Township from asserting a lien or enforcing a lien against the apartment complex. See *Old Bridge Owners Cooperative Corp. v. Township of Old Bridge*, 914 F.Supp. 1059, 1065–66 (D.N.J. 1996) (holding that the Township's only recourse is against the debtor or the FDIC *in personam* but that it may not proceed against the property). OB Partners now seeks an order declaring that the Township is not entitled to penalties in this case. OB Partners asks for a refund in the amount of $165,326.54, plus prejudgment interest. (*See* West Cert., Exh. A). The thrust of its argument is that when the property was subject to federal receivership, the Township was precluded from assessing penalties on the unpaid property taxes and, thus, that the Township should be required to refund that portion of the money that OB Partners paid for the penalties imposed.

The Township contends that nothing in the above-cited Opinion of the Court or any of the Court's unpublished Opinions in this matter ever invalidated the tax-related debt or any of its components (*i.e.*, tax principal, interest and penalties) and, thus, as a result of their contractual arrangement with the FDIC, whereby the taxes on the property were not paid at closing, plaintiffs were required to pay all of the taxes, interest and penalties owed on the land—including those that accrued during the federal receivership. The Township's primary argument is that while 12 U.S.C. § 1825(b)(3) would have exempted the FDIC from paying penalties on the property, plaintiffs here are not the FDIC; rather, they are private parties who cannot invoke that statutory exemption.

## ANALYSIS

### I. Summary Judgment Standard

As an initial matter, the Court determines that summary judgment is the appropriate vehicle for the disposition of this motion. Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mátter of law." Fed.R.Civ.P. 56(c); *see also Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) *(en banc), cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

 In the instant case the Township did not file a cross-motion for summary judgment, but the briefs of both parties indicate that summary judgment is the appropriate vehicle for the disposition of the issues presented. Authority has developed to allow a court to grant summary judgment to a non-moving party, *see American Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574 (3d Cir.1995); however, judgment cannot be entered without first placing the adversarial party on notice that the court is

considering that course, *sua sponte*. *See Chambers Development v. Passaic County Utilities Authority*, 62 F.3d 582, 584 n. 5 (3d Cir.1995). Additionally, the court must provide the moving party with an opportunity to present relevant evidence in opposition to the granting of summary judgment against it.

Here, plaintiffs had adequate notice that the Court might grant summary judgment to the Township. In its opposition papers, the Township noted that it not only sought the denial of plaintiffs' motion, but also the "dismissal of plaintiffs' claim of penalty." (*See* Opp. Br. at 16). Thus, plaintiffs were on notice that the Court was being asked not only to deny their motion but also to award judgment to the Township. Plaintiffs' reply papers implied that they understood this to be the case, because therein plaintiffs repeated that summary judgment was the appropriate vehicle for the disposition of the issue brought before the Court, because no material facts remained in dispute and the only question to be determined was a question of law. The Court, therefore, will proceed to determine whether summary judgment is appropriate for either party.

The issue that the Court must decide here is whether plaintiffs are entitled to a refund for their payment of certain penalties on unpaid property taxes. It is undisputed that the Township assessed these penalties, that OB Partners paid the amounts allegedly owed, and that the Township accepted the payment (of the penalties as well as of the taxes and interest). The Court agrees with the parties that summary judgment is the appropriate vehicle for the disposition of this matter.

## II. Plaintiffs' Motion is Denied

■ In order to determine whether plaintiffs are entitled to a refund for their payment of penalties, the Court must decide whether they may invoke the exemption afforded to the FDIC under § 1825(b)(3).[2] It is axiomatic that the starting point for ascertaining the plain meaning of a statute is the language of the statute itself. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108

S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988). The Court must ask whether Congress has spoken directly to the question at hand. *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Subsection (b)(3) of 12 U.S.C. § 1825 explicitly exempts the FDIC from penalties and fines that would arise from the nonpayment of property taxes:

> (b) Other exemptions
>
> When acting as a receiver, the following provisions shall apply with respect to the Corporation:
>
> \* \* \* \* \* \*
>
> (3) The Corporation shall not be held liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

12 U.S.C. § 1825(b)(3).

The provision clearly exempts the FDIC from penalties such as those at issue in the present case; however, there is no indication that Congress intended any entity other than the FDIC to benefit from this exemption. To the contrary, section (b) which sets forth a total of three exemptions, begins with the language "[w]hen acting as a receiver, the following provisions shall apply with respect to the Corporation." There is no authority in the language of the statute for transferring this exemption to a private party.

■ The policy underlying the application of the exemption to the FDIC flows from the concept of sovereign immunity for agencies of the federal government. *See, e.g., FDIC v. Meyer*, 510 U.S. 471, 473–74, 114 S.Ct. 996, 999–1000, 127 L.Ed.2d 308 (1994). Congress has waived this immunity for the FDIC in certain circumstances; however, the immunity is expressly preserved for the FDIC in § 1825(b)(3). For a private party to claim this immunity would be contrary to the purpose of that immunity, which is to put gov-

---

**2.** There is no dispute that the amount for which the refund is sought here was a payment for penalties. In other words, it was not compensatory in nature. Furthermore, the parties to the

instant motion do not dispute that § 1825(b)(3) would prohibit the Township from assessing these penalties against the FDIC. *See also Old Owners Coop. Corp.*, 914 F.Supp. at 1065.

ernment agencies—here, the FDIC—in a position different than that of private parties in a given situation. To state it another way, sovereign immunity permits agencies of the federal government to occupy a favored position with respect to certain matters. In this case, the sovereign immunity preserved in § 1825(b)(3) may work to the detriment of the Township for claims it pursues against the FDIC, but it should not also work to the detriment of the Township in a claim against a private party.

Furthermore, there is no indication that Congress intended that the property itself, while subject to federal receivership, would be immunized. In other words, there is no indication that the FDIC's sovereign immunity from penalties was designed to travel with the land. If the exemption were meant to preclude municipalities such as the Township of Old Bridge from assessing penalties on the land itself while it was held in federal receivership, such that *no one* would have to pay these penalties—neither the FDIC nor any private party who purchased the land from that institution—then, one would expect § 1825(b)(3) to be phrased more like § 1825(b)(2). Subsection (b)(2) reads:

No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

In subsection (b)(3), however, Congress did not use "property" as the subject of the sentence; rather, Congress referred only to the FDIC's liability for penalties relating to the nonpayment of ad valorem taxes. Especially in light of the provision which comes before it, subsection (b)(3) must be read to mean that the property while held in federal receivership is not insulated from the accrual of penalties and fines but, rather, that the FDIC would not be held accountable for the payment thereof. Plaintiffs, on the other hand, may be held accountable.

Plaintiffs themselves state that the main point of their motion is that "[w]hen the property was subject to federal receivership, the Township could not assess penalties on the unpaid property taxes. Thus, on the date that the FDIC transferred the property to Old Bridge Partners, by operation of law,

penalties had not accrued on the unpaid property taxes." (*See* Reply Letter at 2). Plaintiffs' point, however, depends on a broader reading of the statutory exemption than the words themselves support. Section 1825(b)(3) only precludes the Township from assessing penalties against the FDIC; it does not on its face preclude the Township from assessing those penalties in the first instance on the property while it was held in federal receivership. Thus, plaintiffs are wrong to assume that the penalties in question had not accrued on the property. Section 1825(b)(3) does not state that such penalties shall not be assessed but, rather, states only that the FDIC shall not be responsible for their payment. In the context of the instant dispute, this is a distinction not without a difference.

█ That plaintiffs assumed the FDIC's liability for taxes pursuant to contract with that agency does not entitle them to claim the exemption. As explained above, the exemption in § 1825(b)(3) is a statutory creation, not a right to contract away. Moreover, the Purchase and Settlement Agreement contains no language which would lead the Court to believe that plaintiffs expected otherwise. (*See* this Court's Opinion dated June 13, 1997 at 7). Furthermore, the Court's determination today is not inconsistent with its prior holdings. In its Opinion dated June 13, 1996, the Court simply stated that, pursuant to the Purchase and Settlement Agreement, North County clearly agreed to assume any liabilities of the FDIC with respect to the water and sewer charges at issue and that, as the current owner of the property, North County was responsible for the satisfaction of the liens that attached prior to the federal receivership. The Court did not address the question of penalties and made no mention of subsection (b)(3) of § 1825. Additionally, in its Opinion dated July 23, 1996, the Court expressly left open the issue of whether penalties were properly assessed on the property while it was held in federal receivership. (*See* this Court's Opinion dated July 23, 1997 at 7 n. 2).

This Court's own research has uncovered two decisions in the Northern District of

Illinois which would support the plaintiffs' position on the present motion: *RTC v. Phoenix Bond & Indemnity Co.*, 963 F.Supp. 706 (N.D.Ill.1997), and *S1 IL304 Limited Liability Co. v. ANB Cust. for LG*, 971 F.Supp. 353 (N.D.Ill.1997). Both of those cases rely on the Fifth Circuit decision *in FDIC v. Bledsoe*, 989 F.2d 805 (5th Cir.1993), which extended the *D'Oench, Dhume* doctrine to assignees of the FDIC. The Court has three observations in declining to follow those decisions. First, it does not conclude that the decision in *FDIC v. Bledsoe* compels the result reached in the two Northern District of Illinois decisions. Secondly, that precedent is from outside the Third Circuit and, accordingly, does not bind this Court. Finally, for the reasons expressed previously in this Opinion, this Court reaches a conclusion contrary to that reached in the Illinois cases.

## CONCLUSION

Having determined that summary judgment is the appropriate vehicle for disposition of this motion, for the foregoing reasons, the Court determines that plaintiffs' motion for partial summary judgment on the issue of penalties should be denied and that judgment on this issue should be granted in favor of defendant the Township of Old Bridge.

## ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 29th day of October, 1997,

**ORDERED** that the motion for partial summary judgment on the issue of liability for penalties by plaintiffs North County Conservancy, Inc. and Old Bridge Partners I, L.L.C. be and it hereby is denied and judgment on this issue is hereby granted in favor of defendant the Township of Old Bridge.