TRAVIS COUNTY, et al., Plaintiff,

v.

RESOLUTION TRUST CORPORA-
TION, as Receiver for Bexar Savings
Associations, et. al., Defendants.

No. Civ.A. A98–CA–598ADA.

United States District Court,
W.D. Texas,
Austin Division.

May 11, 1999.

Shirley W. Warren, Travis County Attorney's Office, Austin, TX, for plaintiffs.

Adolfo Ruiz, Villarreal, Moreno & Ruiz, San Antonio, TX, for Federal Deposit Insurance Corporation as Receiver for Bexar Savings Association, defendant.

Kemp W. Gorthey, Kemp W. Gorthey, P.C., Austin, TX, for Travis Star Corporation, defendant.

Keith T. Lauerman, Attorney at Law, Austin, TX, for Mt. Bonnell Shores, Ltd., if active, and if inactive, the unknown owners, officers and shareholders of Mt. Bonnell Shores, Ltd., defendant.

## AMENDED ORDER[1]

ALBRIGHT, United States Magistrate Judge.

On February 12, 1999, the parties appeared before the Court to argue the following motions: Plaintiffs' Third Amended Motion for Summary Judgment and Amended Summary Brief in Support of Summary Judgment (Clerk's Doc. No. 10, 29), Defendants' Response (Clerk's Docs. No. 21, 22), Defendant FDIC's Motion for Summary Judgment (Clerk's Doc. 44) and Defendant Travis Star Corporation's Response (Clerk's Doc. 46). On March 4, 1999, the court ordered additional briefing regarding amounts owed for ad valorem taxes and interest. All parties filed their briefs (Clerk's Doc. No. 53, 52, 55). After reviewing the pleadings and arguments the Court issues the following:

I.

## BACKGROUND

Plaintiffs, Travis County, City of Austin, Austin Independent School District, Austin Community College, Southwest Travis County Road District No. 1 (SWTCRD) and County Education District, request a personal money judgment based on delinquent ad valorem real property taxes, interest, penalties, title expenses, attorney's fees and court costs against the Federal Deposit Insurance Corporation (FDIC). This case involves nine tracts of property which were originally owned by Bexar Savings Association (BSA). Following BSA's failure, the Resolution Trust Corporation (RTC), as receiver of BSA, and subsequently, the FDIC owned the properties. While the properties were owned by RTC and FDIC, no property taxes were paid. The properties were sold to Travis Star Corporation (TSC) in May of 1996. As part of the consideration for the sale TSC and Mac Spellmon entered into an indemnification agreement with FDIC. TSC and Spellmon agreed to indemnify the FDIC for any costs or liabilities arising from the transaction.

There is no dispute concerning the liability for delinquent tax base ad valorem real property taxes and interest relating to the tracts for 1992–1996, however, the FDIC does contest liability for any amount in the nature of penalties or fines, which include but are not limited to penalties imposed under § 33.01(a) and § 33.07 of the Texas Property Tax Code, litigation expenses under § 33.48 of the Texas Property Tax Code, title expenses, attorney's fees and court costs. The FDIC also contests liability for any road district ad valorem taxes for tax years 1992 and 1993. Under both Texas and Federal law, the FDIC has no liability for the special assessments or any related interest, expenses of collection, and attorney's fees. FDIC questions

---

1. Third–Party defendant Mac Spellman, individually, was inadvertently omitted from the original order. The correction is made on pages 9 and 10, of this order.

whether the live pleadings include the special assessments.

## II.

## UNDISPUTED FACTS

The parties do not dispute that ad valorem taxes and interest are owed on the properties at issue. Defendant FDIC acknowledges the ad valorem taxes and the statutory interest accrued are proper and should be paid. Likewise, Defendant Travis Star and Mac Spellmon, individually, acknowledge that pursuant to the indemnification agreement they are obligated to indemnify the FDIC for any liability arising from the transaction.

## III.

## ISSUES

1. Whether FDIC is obligated to pay penalties, attorney fees and collection costs.

2. Whether the indemnification agreement between FDIC and Travis Star obligates Travis Star to pay delinquent tax penalties, fees and costs accrued while land was held by FDIC.

3. When to determine a property's market value.

4. Whether SWTCRD, can attach special assessments against property owned by FDIC.

## IV.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *See Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992).

The Court begins its determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide,* 974 F.2d 653, 655–56 (5th Cir.1992). It then reviews the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994).

## V.

## ANALYSIS

### A. Penalties, Fees and Costs

 The FDIC, as a federal receiver, is entitled to immunity from the imposition of state liens. No involuntary state liens may be put against a federal receiver unless there is express consent. 12 U.S.C. § 1825(b)(2); *Irving Indep. Sch. Dist. v. Packard Prop.,* 970 F.2d 58 (5th Cir.1992). The legislature expressly consented to ad valorem taxes under 12 U.S.C. § 1825 and interest is paid as a matter of policy. However, there is neither consent nor agreement to pay penalties or costs associated with delinquent ad valorem taxes. Under Fifth Circuit case law, the FDIC is not liable for amounts in the nature of penalties or fines, including those imposed under, § 33.01(a), § 33.07, and § 33.48 of the Texas Property Tax Code. *Carrollton–Farmers Branch Independent School District v. FDIC,* 776 F.Supp. 1180 (N.D.Tex. 1991), *Irving Indep. Sch. Dist. v. Packard*

*Prop.*, 970 F.2d 58 (5th Cir.1992). The taxing units do not contest this point.

■ The dispute is whether the immunity protecting the FDIC extends to TSC. The taxing units argue that TSC, a private corporation, is not entitled to the same immunity as a federal receiver therefore is liable for any penalties, costs, and fees associated with the collection of delinquent taxes. The taxing units argument is based on the idea that penalties and costs accrued while the property was in the hands of a federal receiver. They rely on *Old Bridge Owners Coop. v. Township of Old Bridge*, 981 F.Supp. 884 (D.N.J.1997), for support. This court finds *Old Bridge* is distinguishable. In *Old Bridge*, the tax liens pre-existed the federal receivership and the court determined that extinguishing the pre-existing liens would cause an undue hardship on the community relying on tax revenue. In the present case, the liens attached while the properties were in the hands of the federal receiver thus, given the immunity status of a federal receiver, the plaintiffs could not have been relying on that tax revenue. Without the attachment of liens, there are no penalties or costs to be assessed.

Because the FDIC is not liable for the penalties, costs and fees, the question then turns to whether, under the language and meaning of the indemnification agreement, TSC is liable for those amounts. The language of the indemnification is clear and unambiguous. The indemnification agreement only makes TSC liable to the FDIC for the amount it is liable. The protection afforded to TSC only extends to the date they purchased the property. TSC is liable for penalties, costs and fees accrued while they owned the property, but any issue arising from the time TSC purchased the property to the present is better addressed in state court.

## B. Market Value

The parties dispute the valuation of the properties in question. The taxing units argue that the value is set and the Defen-

dants are precluded from disturbing the determined value. Protesting the value of a property is not appropriate in a suit to collect delinquent taxes, those matters should be raised under Texas Prop.Tax Code § 41.41.

Defendants contend § 33.50 of the Tex. Prop.Tax Code allows for another time to argue the value of a property. Section 33.50 sets the time of valuation at the time of the foreclosure suit. *Clint I.S.D. v. Cash Investments, Inc.*, 970 S.W.2d 535 (Tex.1998). Section 33.50(a) specifically provides that, "the court shall determine the market value of property on the date of trial." Defendants assert that there is no connection between § 33.50 and § 41.41.

■ Generally, a party must exhaust its administrative remedies, before being entitled to judicial review. *Texas Educ. Agency v. Cypress–Fairbanks, I.S.D.*, 830 S.W.2d 88 (Tex.1992). A taxpayer has the right to protest a property's proposed value, have a hearing before the appraisal board, if dissatisfied, appeal to the district court. Tex.Prop.Tax Code §§ 41.44 and 42.01. The district court reviews the appeal under the *de novo* standard. Tex. Prop.Tax Code.Ann. §§ 42.01, 42.23. These statutory provisions creating rights and remedies are mandatory and exclusive and must be complied with in all respects. *Hood v. Hays County*, 836 S.W.2d 327, 329 (Tex.App.–Austin 1992, no writ).

■ The law states that the certified copies of the tax roll showing the amount that is due and owing is prima facie evidence that the amount of tax alleged to be delinquent against the property listed is the correct amount. Tex.Prop.Tax Code § 33.47(a) (Vernon's 1992). The taxpayer has the burden of rebutting that presumption. But where, as in this case, the taxpayer did not dispute the appraised value of the property according to administrative guidelines there is no other option but for this court take the value of the property as recorded on the tax rolls.

## IV.

## SPECIAL ASSESSMENTS

### A. Changeover to Special Assessment Not Retroactive

SWTCRD was created in 1994 by order to impose special assessments. Before then the road district was considered a taxing unit which imposed ad valorem taxes. SWTCRD claims the Defendants are liable for personal money judgment based on delinquent special assessments and interest accrued thereon, with expenses for collection and attorney fee.

The FDIC asserts there are no pleading that support SWTCRD contention. FDIC was dismissed from the lawsuit on March 12, 1998. Since that time the only pleading served on FDIC was Plaintiff Travis County's Seventh Amended Original Petition, which was limited to the claim of ad valorem taxes. The FDIC raised this issue in its Motion for Summary Judgment and Plaintiff's only response was that a first amended intervention on behalf of SWCTRD was filed February 17, 1998. A review of the Court's docket sheet shows the FDIC is correct. The dismissal of the FDIC occurred almost a month after the filing of the first amended intervention thus, there are no live pleadings raising the special assessment issue. SWTCRD is precluded from presenting this issue.

■ Notwithstanding, the SWTCRD contends the Defendants are liable for the ad valorem taxes imposed for the years of 1992 and 1993 because there was no retroactive effect of the changeover to special assessments. They further contend the special assessments are in parity with the ad valorem tax liens thus the Defendants, FDIC and Travis Star through the indemnification agreement, are liable for the amounts owed. The FDIC disputes this contention. The FDIC claims the ad valorem taxes that were due for 1992 and 1993 were replaced by special assessment, thus they are immune for any amount owed to SWTCRD. Under Civil Statute Art. 726,

§ 2.018(1), special assessments are subordinate to ad valorem tax liens. The statute provides:

An assessment, a supplemental assessment, or a reassessment and any interest, incurred expenses of collection, and incurred reasonable attorney's fees are a first lien against assessed property until paid, and it is superior to all other liens *except ad valorem tax liens.* (emphasis added).

Although 12 U.S.C. § 1825 expressly consents for the imposition of ad valorem taxes, that consent does not extend to special assessments. *U.S. v. Adair,* 539 F.2d 1185 (8th Cir.1976). The FDIC has no liability for special assessments, related interest, collection, or attorney's fees. *Browning v. Hooper,* 269 U.S. 396, 46 S.Ct. 141, 70 L.Ed. 330 (1926). The Court finds the changeover to special assessments was not retroactive and the FDIC would be liable if there were live pleadings alleging such.

### B. Equality of Taxation

Travis Star alleges that SWTCRD assessed and collected special assessments in an unfair and unequal manner in violation of Article 8, Section 1, of the Texas Constitution. Travis Star contends that FM Properties reached an agreement with the City of Austin in which FM would transfer some of its property over in exchange for permission to develop other lands. Although this Court may rule on state issues where they are intermingled with federal jurisdictional issues this Court does not wish to do so here. The equality of taxation issue between Travis Star and the Plaintiffs is far enough removed from federal receivership that no federal question or diversity survives once the federal receiver has been dismissed. Therefore, this Court orders that this issue be remanded to the district court in which the case was originally filed.

### C. Payment of Taxes

On May 31, 1996, a check in the amount of $25,039.36 was sent to the Travis Coun-

ty Tax Collector's office with instructions to pay taxes for 1992–1995.[2] No other payments have been made since. The Defendants contend the money was misapplied. Defendants assert that part of the payment was applied erroneously to special assessments, costs and penalties. Plaintiffs reply was that the money was applied to delinquent taxes, including ad valorem taxes for 1992–1993 for the SWTCRD, according to procedure. This Court finds that Defendants' argument fails because the money was applied according to procedure and not misapplied.

Based on the tax roles for the years 1992–1996, the delinquent amount of base ad valorem taxes is $ 7,205.40 and delinquent interest amount is 3, 795.36.[3] Defendant FDIC shall pay the taxing units $11,000.76 for the delinquent ad valorem taxes and in continuing their own policy, the statutory interest. As stated earlier, the FDIC is immune from the assessment of fees and costs. This Court orders the Plaintiffs to correct the tax rolls to be consistent with this order.

## IV.

### FDIC's Cross Claim Motion for Summary Judgment

#### A. Standard

The FDIC moved for summary judgment against TSC seeking indemnification for any amount the FDIC may have to pay to Plaintiffs and Intervenor in this cause. The FDIC also requests summary judgment against TSC and Mac Spellman, Individually, for reimbursement of its outside counsel fees and costs incurred in the defense of this case. The Court evaluates FDIC's motion for summary judgment us-

ing the summary judgment standard previously mentioned.

#### B. Indemnification

As stated earlier, TSC and Mac Spellmon agreed to indemnify the FDIC for any sums in the nature of taxes and assessments that the FDIC may be liable for to the Plaintiffs and Intervenor. TSC acknowledges liability to the FDIC under the indemnification agreement for the taxes. The dispute is whether the FDIC's attorney's fees are reasonable in whole or in part because TSC has, from the beginning of this dispute, acknowledged its liability under the agreement and offered to enter into an agreement in this litigation to recognize and pay the FDIC's claims.

After reviewing the indemnification agreement, this Court finds that TSC and Mac Spellmon agreed to,

> "pay be responsible for, indemnify, and hold harmless FDIC .... from and against all claims, debts, liabilities, demands, causes of action suits at law or in equity, losses, taxes, assessments, costs, damages, and expenses, and specifically including attorney's fees, expert witness fees, and court costs...."

Giving the language of the agreement its plain meaning, the Court finds TSC and Mac Spellmon are liable through the indemnification agreement for any amount the FDIC is liable. Additionally, TSC and Marc Spellman shall indemnify the FDIC for all costs associated with this litigation, including but not limited to judgment amount, court costs and attorney's fees.

## V.

### Conclusion

The FDIC sold nine tracts of property to TSC. While the properties were held in

---

**2.** The amount of the check was incorrectly noted on page 4 of Plaintiffs' Reply to Defendants' Response to Plaintiffs' Amended Summary Judgment as $23,039.36. However, according to Exhibit "L", affidavit of Dick Senn, and Exhibit "A", photocopy of check no. 025430 date 5/31/96, of Plaintiffs' & Interve-

nor's Third Amended Motion For Summary Judgment indicate the check amount was $25,039.36.

**3.** Because the FDIC is immune from fees, costs and special assessments those amounts were subtracted from the base amount.

federal receivership no property taxes were paid. The Plaintiffs filed suit hoping to collect on the delinquent amount plus any and all collection penalties, costs, and fees. Federal law does not allow state liens to be assessed against a federal receiver without express consent. While Article 12 U.S.C. § 1825 consents to ad valorem taxes and interest on that amount is paid as a policy matter, there is no consent or agreement for the other amounts, including attorney's fees, costs, and special assessments. Because there was consent Plaintiffs are entitled to, and Defendant FDIC shall pay, the amount of delinquent ad valorem taxes and statutory interest stated above. And through enforcement of the indemnification agreement, TSC and Mac Spellmon shall indemnify the FDIC for amount it is made liable to pay. TSC shall also indemnify FDIC for any and all costs, including but not limited to attorney's fees and court costs, incurred as a result of this lawsuit.

As for the equality of taxation issue between TSC and the Plaintiffs, this Court finds no that federal question nor diversity of citizenship on which to base its jurisdiction thus, remands it to state district court for resolution.